By the Court. Duer, J.
We are clearly of opinion that the Judge erred in the instructions that he gave to the jury, and that upon the facts in evidence not contested, and the special finding of the jury, the plaintiffs were entitled to a verdict; they had proved all the facts necessary to maintain the action.
If, indeed, the special question put to the jury, whether “ the witness, Littlejohn, stated to Mr. Clark, that if he would furnish a lighter at his own expense and risk, and pay the cost of transferring the grain, he relieving me from claims for shortages, and assuming the risk of the wheat in the lighter, and allowing me to retain possession and lien until all was to his satisfaction,” had been answered in the affirmative, the aspect of the case would have been materially changed, and there would have been grounds for arguing that the defendants were entitled to retain their verdict. But the question was answered in the negative, and by this answer the jury, in effect, declared that the statement of Parish, the clerk of the plaintiffs, was entirely correct, namely : he told Littlejohn that “ we (the plaintiffs) would furnish a lighter alongside the boat, or he might furnish a lighter, at our expense, and transfer the wheat into it, and when it was transferred we would pay the freight and take possession of it:" and on his cross-examination, that “his offer of a lighter was intended to cover the whole matter of expenses except weighing.” Such, we are bound to say, are the facts of the case, and the question that arises upon them is, whether Littlejohn was not bound to comply with the proposal thus made, and deliver the wheat in *183 conformity to its terms ? If he was, he had no right to store the wheat, and the defendants, with whom it was stored, in refusing to deliver it to the plaintiffs upon request, were guilty of a wrongful detention. If he was not so bound, the defendants were justified in their refusal, and the verdict must stand. There is plainly only one ground upon which the refusal of Littlejohn to deliver the wheat, upon the terms proposed, can be vindicated, namely: that in giving notice to the plaintiffs of the arrival of the'wheat, he had done all he was bound to do, and was entitled to demand the payment of the whole freight and charges, before any part of the cargo was moved; that the notice, in other words, was equivalent to actual delivery. The law was thus laid down by the learned Judge upon the trial, and he founded on it a positive direction to the jury to find a verdict for the defendants. His language was explicit, that in the case of transportation by common carriers—by ships or vessels—personal delivery to the consignee was dispensed with, and notice to the consignee of the arrival came in lieu of a personal delivery; and that, in the opinion of the Court, the carriers had done all that was required of them to entitle themselves to their freight, and that they had a right to require the payment of the freight before turning out the whole of the wheat;—propositions that amount to saying, that where notice of arrival has been given, the master may instantly and rightfully demand the whole freight, although no portion of the cargo has been discharged, and no opportunity has been given to the consignee of examining its condition and ascertaining its quantity.
We must think that, in these propositions, our learned brother was entirely mistaken; and it seems to us manifest, that the source of the error was his own application of the rule that exempts the carrier of goods by a ship or vessel from the duty, which, as a general rule, the law imposes upon a common carrier, viz., that of delivering the goods, which he transports, to the owner or consignee personally, at the place where the transportation ends. He is bound to seek the person to whom the delivery is to be made, and make its tender, and, consequently, must have the goods with him when the tender is made.—Gibson v. Culver, 17 Wend. 305; Mayell v. Potter, 2 John, Cases 371; Fisk v. Newton, 1 Denio, 45; Price v. Powell, 3 Coms. 322; *184 Schroeder v. Hudson R. R. R. Co., 5 Duer 62. The law, by a very reasonable exception, releases the master of a vessel, in which the goods to be delivered are transported, from the duty of seeking out the owner or consignee, and making to him, personally, an actual delivery or tender of a delivery; but, in his case, holds it to be sufficient that he gives a written notice to such owner or consignee of the arrival of the vessel, and of the place where the goods will be landed, and their delivery be made; thus casting upon the consignee, the duty of attending at the place so designated, of receiving there the delivery of the goods, and paying the freight for their transportation. We think, however, that we are entirely safe in saying that there is no authority, nor semblance of an authority, for the position that the notice, by the master of a vessel, of the place where he intends to deliver the goods, has the same effect as an actual personal delivery or tender by an ordinary carrier, so as to give to the party in the one case as well as in the other, an immediate right to demand the payment of the freight. We believe the doctrine to be absolutely novel. We are certain it would be most unreasonable. The ordinary carrier in tendering the goods themselves, does all that the law can require him to perform, all indeed that he can do, to entitle him to his freight. The master, in giving notice to the consignee, performs only a part of the duty that he is bound to perform, to render his demand of freight consistent with law or reason.
It is a serious mistake to suppose that the payment of freight is a condition precedent to the delivery of the cargo in the sense that has been contended for, that is, precedent even to the discharge of the cargo. The discharge or unlading of the cargo, is a duty that the law casts upon the master, the whole labor and expense must be borne by him or his owner. To enable him to deliver the cargo, this duty of unlading it must first be performed, and its performance is as truly a condition precedent to the constructive delivery of the goods by a tender, as to their actual, by a change of possession.
The payment of freight and the delivery of the goods are simultaneous and concurrent acts; neither, strictly speaking, is a condition precedent to the other. As in the case of the delivery of a deed, and the payment of the purchase money agreed to be *185 made on the same day, they are conditions mutually dependent. The consignee is not bound to pay the freight until the goods are delivered, nor the master to deliver the goods until the freight is paid. If the goods are withheld the freight must be tendered, if the freight, the goods, to enable either party to maintain an action against the other, for a breach of contract. Hence, in the present case, if the master was not in a condition to make an immediate delivery of the wheat, he could have no right to demand the payment of freight; and he certainly could make no delivery that the plaintiffs were bound to accept, so long as the wheat remained on board his vessel, and the duty of discharging it rested upon him. Thus the allegation that the notice which the master had given, was alone sufficient to justify his demand of freight, it seems to us, is proved to be groundless. It evidently escaped the attention of the learned judge who tried this cause, and, perhaps, of the counsel, that to discharge the cargo is a duty that belongs to the master, and his performance of it, unless otherwise agreed, a condition precedent to his dlalm for freight.
But there are other, and very conclusive reasons, for holding that the claim of the master, in the present case, for the whole freight, before the wheat, or any portion of it, was delivered or offered to be delivered, cannot be sustained. We apprehend that it is now settled law, that the owner of goods is not bound to accept their delivery, and pay the freight, until he has had an opportunity of ascertaining how far they correspond in quantity and description with the bill of lading, and of examining into their actual state and condition. He has a right to deduct from the usual or stipulated freight any damage which the goods may have received on the voyage, not imputable to the perils of navigation; and also, any deficiency from the quantity mentioned in the bill of lading; and it is evident, that to enable him to exercise this important right, an examination, prior to the payment of freight, is indispensable. If all the facts, necessary to be known by the owner, can be ascertained by him before an unlading of the cargo, the examination may then be had; but if not, the goods must be unladen at the expense of the master, and - placed in a situation to enable the owner effectually to exercise his rights; this right was very distinctly claimed by the plaintiffs *186 in the present case, and as plainly denied by the master; denied by his refusal to place the wheat in a situation in which it could be examined, unless the whole freight were previously paid. It is true he offered to deliver the wheat, bushel by bushel, receiving a pro rata freight for each bushel as delivered; but it is very clear that this was not an offer to which the plaintiffs were bound to accede. The contract of affreightment, in respect to each consignment, is entire, and no portion of the freight is due until the whole consignment is delivered. The master has no right to divide and split up the consignment into as many lots or parcels as he may deem convenient, making as many contracts as there are parcels, and as many freights as there are contracts. The freight, when payable, is payable as a whole, and it is not payable until all the goods to which it relates have been delivered or tendered.
If before it has been ascertained that the goods to be delivered are all undamaged, and that there is no deficiency in quantity, the master is allowed to divide the consignment into parcels, and demand pay for each parcel as delivered, it was justly observed by the counsel for the plaintiff, that the right of the consignee to recover for damages, or a deficient quantity, may be effectually defeated. One half of the cargo may have been delivered in this form in a sound state, and the pro rata, freight paid, and yet the damage to the residue may exceed the whole freight, which the consignee, had there been no damage, would have been liable to pay; one half of this amount, however, he has already paid, and unless this is immediately refunded, his only remedy is by an action for its recovery. The right of retaining it, which the law gave Tn'm, is gone. It is stated in the Judge’s charge, that the wheat might have been examined on board the boat as it was when it arrived, so as to ascertain its quality and condition; but, upon considering the whole evidence, this question appears so far doubtful, that had it been material, we think it ought to have been submitted to the jury. Let it be admitted, however, that the quality and condition of the wheat might thus have been ascertained, it is not pretended that the fact, that it corresponded in quantity with the call in the bill of lading, could have been ascertained otherwise than by its removal from the boat. This fact, however, was just as important to be known to the plaintiffs, as the *187 state and condition of the wheat, and they had exactly the same right to require that it should be ascertained, before they could be required to pay any portion of the freight—indeed, until it was ascertained, the amount of the freight that would be payable could not be known; it could not, therefore, be demanded; a conjectural payment, on account, the defendants had no right to exact, nor were the plaintiffs bound to make. It is said that the unlading of the wheat, for the purpose of ascertaining its quantity, would have been attended with great labor and expense ; but if this unlading- was a duty which the carriers undertook to perform, if its performance was necessarily implied in their contract to transport and deliver the wheat, the question of its labor and expense was plainly immaterial. We are bound to presume that they were taken into consideration in fixing the amount of the freight. The allegation that the carriers, by unlading the wheat as requested, would have lost their insurance, we do not exactly understand. If this was a usual and proper-mode of discharging cargo from canal boats, an insurance, in the usual terms, would not have been lost. But were this otherwise, if the risk was one which the carriers knew that, in the performance of their duty, they would incur, they should have framed their insurance to cover it, and by not doing so, agreed to assume it. The result is, that the master violated his duty in refusing to unlade the wheat, as requested, and in making the payment of freight a condition precedent. The wheat, it seems, and was admitted, could not with propriety have been discharged upon the wharf to which the canal boat was moored, and it thereby appears that the usage is to discharge such cargoes into lighters brought alongside the boats for that purpose. We do not see why it was not the duty of the carriers in this case to have provided such a lighter, at their own expense, and according to the usage have discharged the cargo. The allegation that by so doing they would have lost their lien for the freight, we consider to be groundless. So long as the examination into the condition and quantity of the wheat was going on, and until the amount to be paid for freight was ascertained, the carriers would have retained their possession and their lien—just as certainly as if the wheat had remained on board the canal boat, and the necessary examination had there been made. The mere' *188 transfer of the wheat from the boat into the lighter could never have been construed as a final delivery to the plaintiffs, changing the possession, and thereby extinguishing the lien of the carriers.
But whether the carriers were bound to provide a fighter, and whether by so doing they would have lost their lien, are questions which it is not here necessary to determine. The plaintiffs offered, at their own expense, to provide a fighter, and that the carriers should. retain their possession, and consequently their lien, until the freight was ascertained and paid. It was the manifest duty of the master and Ms owner, Littlejohn, to have complied with this offer, by unlading and delivering the wheat in conformity to its terms; their refusal to comply with it was in effect a refusal to deliver the wheat at all. It was a breach of their contract, amounting in law to a wrongful conversion to their own use of the property they had undertaken to deliver, and the defendants, by refusing to surrender to the plaintiff, upon request, the property thus wrongfully converted, were guilty of its wrongful detention. Upon the evidence on the trial, the plaintiffs were entitled- to a verdict for its full value.
The verdict for the defendants must therefore be set aside, and there must be a new trial, with costs to abide the event.