ONE THOUSAND TWO HUNDRED AND NINETY–ONE BALES OF TOBACCO (UNITED STATES v.). See Case No. 15,-965.

ONE THOUSAND TWO HUNDRED AND SEVENTY–SEVEN DOLLARS AND FIVE CENTS (CASH v.). See Case No. 2,498.

---

## Case No. 10,536.

ONE THOUSAND TWO HUNDRED AND SIXTY–FIVE VITRIFIED PIPES.

[14 Blatchf. 274; 5 N. Y. Wkly. Dig. 194.] [1]

Circuit Court, S. D. New York. July 19, 1877. [2]

CARRIERS—WHEN FREIGHT IS DUE—DELIVERY IN PARCELS—DISCHARGE WITHOUT NOTICE TO THE CONSIGNEE.

1. Under an ordinary bill of lading, freight is demandable only when the goods are discharged from the vessel and an opportunity is had for

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 5 N. Y. Wkly. Dig. 194, contains only a partial report.].

[2] [Reversing Case No. 14,280.]

their examination by the party who is to receive them; but the carrier is not bound to part with the possession, or to make actual delivery, except upon payment of the freight.

[Cited in Clark v. Five Hundred and Five Thousand Feet of Lumber, 65 Fed. 239.]

[Cited in Barker v. The E. M. Wright, 1 D. C. 27.]

2. Neither party can require of the other, as of right, that goods under one bill of lading shall be delivered in parcels, on the freight of such parcels being separately paid.

3. Where a carrier of goods by a vessel stood upon his legal right not to deliver a cargo, or any part of it, till payment of the freight, and the consignee of the cargo stood upon his right not to pay the freight untill the cargo was discharged ready to be completely delivered upon payment of freight, and subsequently the cargo was landed, but no notice was given to the consignee nor any demand made upon him for the freight: *Held*, that a suit against the goods for the freight was prematurely brought, when brought before such notice or demand.

4. Where the amount involved in an admiralty suit is not sufficient to permit a review by the supreme court of the judgment of the circuit court, a general finding of facts and law by the latter court is sufficient, under the act of February 16, 1875 (18 Stat. 315, § 1).

[Appeal from the district court of the United States for the Southern district of New York.

[This was a libel for nonpayment of freight by Mary Dunham, executrix, and others, against one thousand two hundred and sixty-five vitrified pipes (William Nelson, Jr., claimant). From a decree of the district court for libellants (Case No. 14,280), claimant appeals.]

Franklin A. Wilcox and W. R. Beebe, for libellants.

Edwin W. Stoughton and Edward Seymour, for claimant.

JOHNSON, Circuit Judge. The rule of law in respect to the delivery of merchandise from vessels is well settled. Under the ordinary bill of lading, the freight is demandable only when the goods are discharged from the vessel, and an opportunity is had for their examination by the party who is to receive them. On the other hand, the carrier is not bound to part with the possession, or to make actual delivery, except upon payment of the freight. Neither party can require of the other, as of right, that goods under one bill of lading shall be delivered in parcels, on the freight of such parcels being separately paid. All such arrangements rest upon the special agreement of the parties concerned, and not upon the general law. In Clark v. Masters, 1 Bosw. 177, 185, Duer, C. J., states the rule thus: "The consignee is not bound to pay the freight until the goods are delivered, nor the master to deliver the goods until the freight is paid. If the goods are withheld, the freight must be tendered, if the freight, the goods, to enable either party to maintain an action against the other for a breach of contract." In the case of The Eddy, 5 Wall. [72 U. S.] 481. Mr. Justice Clifford, giving the opinion of the supreme court of the United

States, says: "Delivery on the wharf, in the case of goods transported by ships, is sufficient under our law, if due notice be given to the consignees, and the different consignments be properly separated, so as to be open to inspection, and conveniently accessible to their respective owners. Where the contract is to carry by water, from port to port, an actual delivery of the goods into the possession of the owner or consignee, or at his warehouse, is not required, in order to discharge the carrier from his liability. He may deliver them on the wharf; but, to constitute a valid delivery there, the master should give due and reasonable notice to the consignee, so as to afford him a fair opportunity to remove the goods, or put them under proper care and custody."

The question in this case, therefore, is whether the libellants, at the time the libel was filed, were in that condition, in respect to the goods in question, which entitled them to demand payment from the claimants, or entitled them to assert, as against the goods themselves, not a mere lien for payment, or a right to hold the possession of the goods until payment was or should be made, but a right to require immediate payment of the freight, as against the goods carried.

In illustration of this position, Mr. Justice Curtis may be cited, who says, in Salmon Falls Manuf'g Co. v. The Tangier [Case No. 12,265]: "If the carrier is not ready to deliver, it is of no importance from what cause such want of readiness proceeds. Whether it be because the goods are still in the vessel, or because they are so mixed with others on the wharf, that they are not accessible, * * * is immaterial. If he is not ready to deliver, the law does not deem the delivery made." In the case of The Middlesex [Id. 9,533], the same learned judge says: "When the master of the vessel gives notice to consignees of cargo, that the vessel is about to discharge at a particular wharf, it is deemed equivalent to a declaration by him that he will be in readiness to deliver the cargo there, at some proper time, as soon as, by the use of due diligence, he can get it out of the vessel in a state to be delivered. * * * It must be remembered, that it is not knowledge of the arrival of the vessel, and that she is discharging, but notice of the readiness of the master to deliver, which is the operative fact."

The first communication upon the subject of the delivery of the pipes was contained in a note from Thomas Dunham to Nelson, dated February 21st, in which Dunham says: "I am anxious to secure to the vessel the freight on the pipes before delivery, and beg of you to send me check for the amount. Otherwise, I must take legal measures to secure the payment of the same." This communication was made before the vessel was ready to commence the discharge of the pipes. On the 26th another note was sent to Mr. Nelson from Mr. Dunham, notifying him that the vessel would that morning commence to discharge on pier No. 19, East river, the stoneware sewer pipes, rings, &c., consigned to him. It adds: "You are requested to pay the amount of freight named in the bill of lading upon the same, and remove them from the wharf. Upon payment of the freight, the pipes, &c., will be delivered to your carts. If not paid and removed from wharf I shall proceed against them to collect it." On the same day and immediately upon the receipt of the note last mentioned, Nelson wrote to Dunham, and had delivered at the office of the latter, his answer, in which he says: "When the goods are on the wharf, and I am properly notified of same, I shall then pay the freight due on them; or, I will take them away from wharf and pay you, ton by ton, freight on same, for all pipes, rings and covers delivered as per bill of lading held by me. If I do not hear from you by one p. m., to-day, of your election of either of above propositions, I shall be in attendance on the wharf at that time, and make formal demand of my property, and shall hold you responsible," &c. To this communication no reply was made, and about or shortly after one o'clock, Mr. Nelson, the claimant, with his clerk Mr. Walmsley, went to Mr. Dunham's office, and there, having in his hand the amount of the freight, according to the bill of lading, said to a person in charge of the office, that he was ready to pay the freight, and demanded his pipes by the H. L. Routh. To this the reply was, that the pipes would not be delivered except upon the payment of the full amount of freight, as per bill of lading. The parties then proceeded to the wharf where the vessel was, and there it appeared that a part only of the pipes were discharged. As to what then took place the witnesses are not exactly agreed, except that no adjustment took place of the questions as to the respective claims of the parties. The libellants appear to have insisted that the whole freight should be paid, before the claimant should take any part of the goods from the wharf. On the other hand, the claimant insisted that he was not bound to pay the freight until all the goods were discharged from the ship, in order that there might be opportunity to examine the goods before the completion of the delivery and payment of the freight. Each party seems, by law, to have been right in the view thus presented; and, of course, neither was, so far, in fault. The claimant further offered to take the cargo in parts, as the same was landed, paying the proportional part of the freight, but this the libellants refused to permit, as was their right; and the parties separated without any adjustment of their conflicting views. The claimant reiterated, on leaving, that, when his goods were discharged and ready for delivery, he would, on notice, pay the freight and take them away. It was made a question, in the district court, whether the claimant did not insist that he was not liable

to pay for any broken pipes or rings contained in the cargo, even though not broken by the fault of the carrier; and such was the view of the evidence taken by the district court. Further evidence was adduced in the circuit court, which satisfies me that no such ground was taken by the claimant. From some controversy which had formerly taken place between the same parties, the persons acting for the libellants probably apprehended that the claimant would object to pay for broken pipes and rings, and they, therefore, stood upon their legal right not to complete the delivery of the cargo, or any part of it, till payment of the freight. On the other hand, the claimant stood upon his right not to pay the freight until the cargo was discharged, ready to be completely delivered upon payment of freight. Neither party was, at this period, in default, and neither was in a condition to maintain an action against the other. Subsequently, the cargo was landed, but no notice was given to the claimant, nor was any demand made upon him for the freight. Assuming that the libel was not filed until after the pipes and rings were all discharged, it was premature, because there was no offer, tender or notice of readiness to deliver, at any time when it was in the power of the carrier to make delivery on receiving the freight. In the ordinary course of trade, property is allowed to be taken away as landed, either on receiving the pro rata freight or security for payment; but the claimant's offers in these respects were rejected. Each party chose to stand upon the legal right, and must be adjudged accordingly. The libellants fail, therefore, to maintain their case, because, when the libel was filed, the claimant was not in fault in not paying the freight. But, I might well go further and assert, that, upon the proof, it appears that the libel was filed before the pipes and rings were discharged from the vessel. I do not see that the examination of this question, upon the evidence, in detail, can be of any advantage to the parties or to the law in general, and I, therefore, content myself with stating the conclusion at which I have arrived.

In regard to the findings of fact and law required by the act of February 16, 1875 (18 Stat. 315, § 1), they seem to be required in view of the exercise of the appellate power of the supreme court of the United States, and, therefore, where the amount involved is not sufficient to permit a review of the judgment of the circuit court by the supreme court of the United States, a more general finding only must be sufficient.

The decree of the district court—Twelve Hundred and Sixty-five Vitrified Stoneware Sewer Pipes [Case No. 14,280]—must be reversed, and the libel be dismissed, with costs.