## Case No. 9,209.

### The MARY E. TABER.

[1 Ben. 105.] [1]

District Court, E. D. New York. Jan., 1867.

CHARTER-PARTY—DEMURRAGE—DEFAULT OF CHAR-
TERER—SUNDAY—LIEN—EXPENSES OF
UNLOADING CARGO.

1. Where a charter-party specified that the charterer should pay demurrage for detention of the vessel, "provided such detention shall happen by default" of the charterer, and the master having delivered his deck load at one dock, was required by the charterer to deliver the rest at another (which was according to the custom of the trade), and lost several days in getting there by reason of the weather, held, that no demurrage could be recovered under the charter for such detention, nor for Sundays.

[Cited in The Glover. Case No. 5,488; Thacher v. Boston Gaslight Co., Id. 13,850; Two Hundred and Sixty-Eight Logs of Cedar, Id. 14,295; Moody v. Five Hundred Thousand Laths, 2 Fed. 608; Houge v. Woodruff, 19 Fed. 138. Cited, but not followed, in McLeod v. Sixteen Hundred Tons of Nitrate of Soda, 55 Fed. 530, 531.]

2. Where the charterer had men and carts at the dock on a specified day to receive the cargo, but the vessel did not arrive till two days after, and then the master, without notice to the charterer, discharged the cargo and employed persons to cart it from the side of the vessel up the wharf and there to pile it, held, that the master could not throw upon the charterer this additional expense, without having first notified him of his intention to land and remove the cargo at the charterer's expense.

[Cited in Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit, 23 Fed. 729.]

This action was brought by John Arnold, the owner of the schooner Mary E. Taber, to enforce an alleged lien upon a cargo of wood transported in that vessel from Holmes' Landing to the port of New York under a charter made with Bonnel, the claimant of the cargo. The charter-party provided, among other things, for certain lay days in loading and discharging, and for demurrage at a certain rate, to be paid for every day's additional delay, "provided such detention shall happen by default of the party of the second part" —the charterer. The claim was for $1,121.50, freight and demurrage, and $72.25, disbursements. Of this sum, $772, not really in dispute, had been paid by order of the court after the commencement of the action, and the controversy was only as to the demurrage and the disbursements.

P. C. Crooke, for libellant.

Benedict, Tracy & Benedict, for claimant.

BENEDICT, District Judge. Under the proofs in this case the objection to the four days' demurrage while loading, was properly abandoned. To that the libellant is clearly entitled. He is also, in my opinion, entitled to demurrage on the discharging, but not to the full amount claimed. By the custom of the

---

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

trade, as conceded here, the vessel was bound to deliver the cargo at different places in the port, if requested. The deck load was accordingly delivered at the foot of Canal street, and the remainder at Clinton Avenue dock. No objection was made to going to Clinton avenue, but, on the contrary, the master, rejecting the charterer's offer to get a tug, expressly undertook to procure a tug for himself and tow there from Canal street. Some days were lost, however, in getting there because, as the master says, of the weather. This delay was not caused by any default on the part of the charterer, and under this contract, neither that portion of the detention, nor the detention of Sundays, can be charged to him. 1 Pars. Mar. Law, p. 265; Sprague v. West [Case No. 13,255]; Towle v. Kettell, 5 Cush. 18.

One day was also lost by reason of the vessel being aground when ordered to go to Canal street, which must be borne by the libellant. There was some delay at Canal street, which the claimant insists should also be charged to the libellant upon the ground that, by reason of being aground when he received orders, he lost his turn at Canal street. But the delay in getting to Canal street did not, as it appears, prevent the vessel from getting a berth there and being ready to discharge as soon as she arrived. The only reason why she did not then discharge was, because the dock was full of wood which it was necessary first to remove. The master testifies that this wood which filled the dock at Canal street was not discharged from any vessel which arrived after he had notice to proceed there, and this evidence does not seem to be overborne by the testimony of the claimant. The burden of excusing the delay in receiving the cargo at Canal street was upon the claimant, and no person having been produced from the dock to contradict the evidence of the master, I shall hold the claimants to be responsible for that delay. According to these views the libellant is entitled to recover, in addition to the four days in loading, three days' demurrage in the discharging.

As to the disbursements claimed, the facts are these. On Saturday the charterer designated Clinton avenue as the place of discharging the remainder of the cargo, and the master then undertook to procure a tug and be towed there; and on that day the charterer had men and carts at Clinton Avenue dock to receive the cargo on its arrival. The vessel did not proceed to Clinton avenue until just at night on the following Monday. On Tuesday the berth was occupied so that no cargo could be discharged, and on Wednesday, in the absence of the claimant, and without further notice to him, the master began to discharge the wood upon the wharf, and also employed persons to cart it from the vessel's side up the wharf and then pile and cord it.

The wharf is a long one, where cargoes can only be discharged at the end, and the master testifies: "I carted it for my own necessity,

to make room for landing, as a canal boat was discharging at the same time. It would have filled up the wharf, if I hadn't carted it up the wharf. There was no other practicable way. I paid for carting and cording the wood up, $72.25."

This sum is claimed to be recoverable in this action upon the grounds that the disbursement was made necessary by the charterer's selection of such a wharf as the place of unloading.

But the non-delivery of this cargo on Clinton Avenue wharf upon the arrival of the vessel there, did not arise from any peculiarity in the wharf or any permanent obstruction which rendered a landing in the usual manner, within a reasonable time, impossible or improbable. It was simply a case of delay on the part of the charterer to take the wood as fast as landed. For this delay, the charterparty provided, and a compensation for it was fixed, and a lien on the cargo created for the amount. Before the master could justly cast upon the charterer the additional expense of carting away and cording the wood, it was incumbent on him to give a further notice to the charterer of his intention to land and remove the wood at the expense of the charterer. The Stephen Crowell [Case No. 13,362], Betts, J., 1859; Blossom v. Smith [Id. 1,565], Nelson, J., Oct., 1856. It is not pretended that any notification of such intention was given in this case, and in the absence of any such notice, I must reject the claim for these extra disbursements, which are not shown to have resulted in any benefit to the claimant, and which arose from the master's taking upon himself a labor not cast upon him by the contract, nor necessary to enable him to reap the full benefit of his charter.

This decision I prefer to rest upon the view here taken of the shipmaster's duty, rather than upon the ground that the disbursement was for service in the nature of stevedore service, and so, according to the decisions, not recoverable in a court of admiralty. But it is proper to add, that a claim for like disbursements was held by Judge Betts, in the case of Goughran v. One Hundred and Fifty-Seven Tons of Coal [Case No. 5,634], 1858, not to be enforceable in the admiralty. See, also, Regan v. The Amaranth [Id. 11,664], Hall, J., 1859.

A decree will accordingly be entered in favor of the libellant for the freight and seven days' demurrage according to the rates of the charter-party, with interest, less the sum paid by order of the court.

A reference may be had to ascertain the amount, if it be not agreed on by the parties.