COOMBS (HUTCHINSON v.). See Case No. 6,955.

# Case No. 3,189.

## COOMBS v. NOLAN et al.

[7 Ben. 301.][1]

District Court, S. D. New York. May Term, 1874.

DEMURRAGE—BILL OF LADING—DUE DILIGENCE—EPIDEMIC AMONG HORSES.

1. A load of granite blocks was brought to New York in a schooner, under a bill of lading, which contained no special clause as to the delivery. They could not be discharged without the aid of horses, and, owing to the prevalence of an epidemic among horses, the consignees of the goods were not able to obtain horses for the discharge for several days. The owners of the vessel filed a libel against the consignees to recover demurrage for the detention of the vessel during the delay. *Held*, that under the bill of lading, the consignees were bound to discharge the cargo in the usual way, with reasonable diligence.

[Cited in Bowen v. Decker, 18 Fed. 752; Houge v. Woodruff, 19 Fed. 137; Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit, 23 Fed. 730; The J. E. Owen, 54 Fed. 187.]

2. Under the circumstances, the consignees had used reasonable diligence in the discharge, and were not liable for demurrage.

[Cited in Henley v. Brooklyn Ice Co., Case No. 6,363; One Hundred and Seventy-Five Tons of Coal, Id. 10,522; Addicks v. Three Hundred and Fifty-Four Tons Crude Kainit, 23 Fed. 729.]

[This is a libel in admiralty brought by Pilsbury Coombs, master of the schooner Yankee Blade, to recover damages for the detention of the vessel by Michael Nolan and Michael McGrath, consignees.]

Scudder & Carter, for libellant.

Matthew Daly and F. R. Coudert, for respondents.

BLATCHFORD, District Judge. In October, 1872, the schooner Yankee Blade, of which the libellant was master, brought a load of granite blocks to New York, under a bill of lading therefor which contained no

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

provision in respect to their discharge, except that they were to be delivered to the respondents, and to be discharged with the assistance of the crew of the vessel. The libel claims $300 damages for the detention of the vessel by the respondents, on the allegation that they took fourteen days to discharge her, whereas they ought to have discharged her in two days, and that the delay was caused by the negligence of the respondents after the arrival of the vessel, and after they received notice of her readiness to discharge. She arrived on the 19th of October, and reported to the respondents. She did not obtain a berth at the proper wharf for unloading, so that her unlading could have been commenced, until the 25th. She actually began discharging on the 31st, and finished discharging on November 2d. Due diligence was used after she began discharging, and, on the evidence, the only delay for which the respondents could, in any event, be held liable, would be for the six days from October 25th to October 31st. As to this delay, the defence set up in the answer is, that it was not possible to procure the necessary horses for the discharge of the cargo until the 31st of October; that horses were indispensable for the purpose; and that, owing to an epidemic or contagious disease which then prevailed among horses, it was not possible to procure them at any price. The evidence shows the prevalence of such an epidemic among horses; that the respondents, after the vessel obtained her berth for unloading, used all reasonable diligence to obtain horses; that horses were indispensable, not only to hoist the stone on to the dock, but to cart it away, because the owner of the wharf would not allow stone to lie on the wharf; that the respondents finally obtained and used three horses for the work, one to hoist the stone from the vessel, and two to cart it away; and that they paid for the use of the three $20 per day, when the ordinary price would have been, for the three, $8.25 per day.

On these facts, the question of law arises, as to whether the respondents are liable for the delay caused by their inability, because of the epidemic, to procure the necessary horses. There can be no doubt, I think, that the only obligation resting on the respondents, under the contract in question, was to take the stone in the usual and customary way, with reasonable diligence. There was no contract binding the respondents to discharge the cargo in a specified number of days. According to all the authorities, a delay caused by the act of God, or other vis major, while it will not relieve a freighter from paying demurrage, where he enters into a positive undertaking to discharge a cargo in a given number of days, will not be visited upon him where his liability results from implication of law, and extends only to the exercise of proper diligence in the customary manner. In such cases, the delay is re-

garded as a misfortune, caused by vis major, and each party must bear the loss he has suffered, if no fault can be imputed to him; and that the discharge of the cargo was rendered impossible by a cause over which he had no control. Ford v. Cotesworth, L. R. 4 Q. B. 127, 5 Q. B. 545; Cross v. Beard, 26 N. Y. 85. In the present case, in view of all the circumstances, I think that the respondents discharged the cargo in a reasonable time; that they were guilty of no fault or laches; and that any delay which occurred was attributable to causes over which they had no control.

The libel must be dismissed, with costs.