ADDICKS *v.* THREE HUNDRED AND FIFTY-FOUR TONS CRUDE KAINIT.[1]

THE CARL.[1]

*(District Court, S. D. New York.* March 22, 1885.)

1. DEMURRAGE—CUSTOM—DISCHARGE INTO LIGHTERS—FALSE NOTICE—REASONABLE DILIGENCE.

It is the usage in the port of New York for ships loaded with kainit to discharge into lighters. Under this usage it is the ship's duty to wait for lighters a reasonable time before discharging on the dock. The master of the ship Cleopatra, loaded with kainit, sent word to the consignees on January 11th that the ship was at the dock ready to discharge, and requested lighters to be sent at once. She did not reach the dock till the morning of the 12th, which was Saturday. No lighter was sent till the 15th. The ship claimed demurrage for the 12th and the 14th. The consignees claimed that she was discharged in a reasonable time. *Held,* that false notice of readiness to discharge was no notice, and therefore the ship was not entitled to demurrage for the 12th. But the notice was sufficient to have enabled the consignees to have a lighter alongside on the 14th, and therefore the ship was entitled to demurrage for that day. *Held, also,* that, under the usage to discharge into lighters, the ship had a right to demand that lighters shall be brought along-side with reasonable diligence, and to receive aboard as fast as the ship can deliver, in the absence of special circumstances preventing; no fixed rate of tons per day being obligatory.

2. SAME—DISCHARGE ON DOCK IN ABSENCE OF LIGHTER—LIABILITY THEREFOR—CUSTOM.

The ship Carl, loaded with kainit, began to discharge into lighters. Having filled one lighter at 12 M., and no other being then along-side, she began at 2 P. M. to discharge on the dock. Another lighter came the next morning. *Held* that, in view of the absence of any fixed usage to discharge a particular number of tons per day, the ship had no right to begin to discharge on the dock without reasonable and timely notice of her intention; and that the slight delay in the coming of the second lighter did not justify the Carl in discharging on the dock; and that the consignee was entitled to recover the extra expense thereby occasioned him.

Demurrage.

*Hill, Wing & Shoudy,* and *H. Putnam,* for libelants.

*Wilcox, Adams & Macklin,* for claimants.

BROWN, J. The libelant, Addicks, claims two days' demurrage for the detention of the ship Cleopatra, during Saturday and Monday, January 12, and 14, 1884, in discharging some kainit, part of the cargo of the ship. The ship arrived in New York on the seventh of January, loaded with petroleum barrels above, and kainit (resembling salt) below. The ship was required by the charter to go to two different wharves to discharge. The bills of lading required each consignee, upon arrival of the ship, to give immediate notice of the dock to which she should go, in order to deliver their respective portions of the cargo. The claimant, accordingly, whose cargo was at the bottom, gave no-

---

[1] These were two distinct cases, but as the principles involved were similar, and the same proctors appeared in both cases, only one opinion was written. In each case there was delay in getting lighters along-side vessels which were ready to discharge. The Cleopatra waited for the lighters before discharging, and then libeled the cargo for demurrage. The Carl did not wait for the lighters, but discharged on the dock, and was libeled for the extra expense occasioned thereby.

tice on the 8th, the day after her arrival, that the ship should go to Merchants' stores. The evidence shows that the custom of the port is for kainit to be discharged in lighters, or in schooners, along-side the ship, except occasionally when it is directed to be put on the dock in order to be stored. This usage has grown out of the commercial necessity arising from the fact that kainit is perishable cargo, needing protection from rain, snow, and dampness; and also because it is cheap for its bulk and weight, necessitating economy in handling. A discharge into lighters or schooners subserves these ends. The correspondence of the parties shows that it was understood in this case that the kainit was to be discharged along-side into lighters, as customary. On Friday, the 11th, the claimants received notice from the captain, and also from the ship's agents, that the ship was ready to discharge at Merchants' stores, and they requested lighters at once. On sending to the place of discharge the respondents found that the ship had not arrived there. The next morning, (the 12th,) at a little before 9 o'clock, an agent of the claimants again went to Merchants' stores, and found that the ship still had not arrived. Two letters subsequently passed between the claimants and the ship's agents on the same day; the one complaining of false notices, and the other assuring the claimants that the ship was then actually at Merchants' stores. On further inquiry this was found to be the fact. She arrived there between 9 and 10 on Saturday, the 12th. No schooner was sent by the claimants along-side until Tuesday morning, the 15th, when the discharge was immediately commenced, and completed on the 18th, at 3 P. M. The libelant claims demurrage for two days, the 12th and the 14th. The claimants contend that the ship was discharged within a reasonable time, and that no demurrage can be justly allowed.

1. The time and mode of discharge, not being provided for by the bill of lading, must be governed by the usages of the port, the agreement of the parties, or the rule of reasonable diligence. The usage to deliver kainit into lighters or schooners along-side is, in this case, so clearly proved, except when specially directed otherwise for the purposes of storage, as to form one of the obligations of the ship that she could not disregard without justifiable cause. The mere absence of lighters at the moment the ship arrives at her dock, furnishes, therefore, no warrant for an immediate discharge of the cargo upon the wharf. Her obligation to discharge according to the established usage of the port is an implied part of her contract. In such a case she cannot, at her master's option, discharge upon the dock, except upon the refusal of the consignee to receive, or upon such unreasonable delay as is tantamount to a refusal; and if for such a cause the vessel does discharge upon the dock, she does it under the general authority of the master, who is bound in such a case to make provision for the safety of the cargo, and to give due notice to the consignee. For any ordinary detention through want of lighters she must look

to the consignee and the cargo for damages in the nature of demurrage. In the case of the Carl, the delay of a few hours in getting a second schooner along-side was no such delay as warranted the ship to begin to discharge on the dock; and the extra expense caused thereby must therefore be borne by the ship. *The Mary E. Taber,* 1 Ben. 105.

2. The evidence is not sufficient to establish any definite custom or usage, as between the ship and the lighters, in respect to the number of tons of kainit that shall be discharged per day; or any fixed time within which such a cargo must be unloaded. The only rule, therefore, that can be applied, in the absence of any provision on that point in the bill of lading, is that of reasonable diligence. To require of the consignee more than this, would be to allow to the ship all the benefits of a contract for "quick dispatch," when the bill of lading contains no such stipulation. *Fish* v. *One Hundred and Fifty Tons Brown Stone,* 20 FED. REP. 202, 203; *One Hundred and Seventy-five Tons of Coal,* 9 Ben. 400, 402; *Coombs* v. *Nolan,* 7 Ben. 301; *Henley* v. *Brooklyn, etc.,* 8 Ben. 471.

The obligation to use reasonable diligence applies equally in providing lighters or schooners for the receipt of the cargo according to custom, and to the rate of discharge after the lighters are along-side. In receiving the cargo there is little to be done on board the lighter or schooner except to trim the cargo as taken aboard,—usually a very slight labor. The chief work in such a mode of discharge is upon the discharging vessel, and the amount that may be discharged depends upon a variety of circumstances; such as the number of men and horses employed; whether the crew, or stevedores, are used; and upon the condition of the cargo, whether loose, or, as sometimes happens, so caked as to require to be dug out with a pick. Practically, therefore, the rate of discharge depends upon the discharging ship, and it would be an unreasonable rule that should limit the ship as to the amount that she might discharge per day, when all that she could discharge might, without any inconvenience to the lighter or schooner, be received by the latter. The evidence before me in this case, as well as in other cases, shows that, with an ordinary complement of men and one horse, from 60 to 70 tons will usually be discharged per day; with additional men and two horses, from 100 to 150 tons, though the latter is very rarely reached. The rule adopted by the maritime exchange, of 60 tons per day for cargoes of salt, iron, and sulphur, represents very nearly an ordinary single team's work. It is but reasonable diligence, however, on the part of the lighter in such cases to receive whatever the ship can offer. The ship may, therefore, rightfully demand of the lighter, while along-side, that she shall receive as fast as the ship can deliver, unless there be some special circumstances, such as ice, for instance, to interrupt the usual changes in the lighter's position; and such, from the testimony of several witnesses, it would seem, has been the practice. I cannot sustain, there-

fore, the contention that any fixed number of tons per day shall be taken as an average by which to determine what is reasonable diligence in receiving the cargo, as respects the whole period from the time the ship is ready to discharge.

In procuring lighters the consignee of part of a cargo is bound to reasonable diligence only. *Higgins* v. *U. S. Mail, etc.*, 3 Blatchf. 282; *Coombs* v. *Nolan*, 7 Ben. 301; *Henley* v. *Brooklyn, etc.*, 8 Ben. 471; S. C. 14 Blatchf. 522; *Finney* v. *Grand Trunk, etc.*, 14 FED. REP. 171. He is entitled to reasonable notice (which, by the usual custom, is at least 24 hours) of the time when the ship will be ready to discharge, in order to make his arrangements to have a lighter or schooner alongside. After this, he should have additional lighters on hand for the use of the discharging ship without delay, unless the absence of lighters is further excused by reasonable cause. Since a considerable difference, however, may exist in the rate of the ship's discharge, dependent entirely on her own option, it is clear that if additional lighters are required, a slight delay in bringing a second lighter alongside, owing to a rapid discharge by the ship, cannot be deemed negligence in the consignee unless timely notice is given; and where inability to furnish lighters without delay is proved, notwithstanding the exercise of all reasonable diligence to obtain them, the ship has no claim, in the absence of any specified lay days, and where, as in this case, there is no custom nor stipulation fixing the rate of discharge. *Postlethwaite* v. *Freeland*, 5 App. Cas. 599, and *Coombs* v. *Nolan, supra.*

The false notice given on the 11th I must treat as no notice, and therefore exclude any claim for the 12th. The notice was sufficient to require the claimants to have a lighter or schooner along-side on Monday, the 14th, and the evidence does not show a sufficient legal excuse for one not being sent there by that time. If the Fannie Brown, on which the libelants relied to take this kainit, was free on Saturday the 12th, there is no sufficient reason why she should not have proceeded at once to take the Cleopatra's cargo; and if she was blocked up on Saturday, there was sufficient time for the claimants either to have got her clear, or to have procured another schooner for Monday morning. In the case of Addicks, therefore, I hold the libelants entitled to one day's demurrage, for which a decree may be entered with costs; in the case of *The Carl*, the libelant is entitled to $65, with interest and costs.