## THE VIOLA.

## FORSYTH v. STETSON et al.

(District Court, D. Massachusetts. December 6, 1898.)

No. 898.

1. SHIPPING—DEMURRAGE—DELAY IN DISCHARGE OF CARGO.

While, in the absence of qualifying circumstances, it is usual and customary at the port of Boston for a consignee to have a berth provided at which a vessel may discharge her cargo within 24 hours after her arrival, by the custom of the port the presence at the designated wharf of other vessels, which arrived earlier, is considered such qualifying circumstance, and in such case vessels are required to wait their turn to discharge without demurrage for the delay so caused. *Held*, that such custom was a reasonable one within reasonable limits, and under ordinary circumstances, and that a vessel loaded with lumber was not entitled to demurrage because of a delay of 15 days, caused by so waiting her turn to discharge, it not appearing that the wharf was too small for the ordinary business of the owner, nor that he willfully or negligently permitted a large number of vessels to collect for discharging at the same time.

2. SAME—REQUIRING DISCHARGE AT WHARF OF VENDEE.

Where a bill of lading for a cargo requires its delivery to the consignee "or assigns," the master knows that the wharf of discharge may not have been selected; and the fact that the consignee sells the cargo before its arrival, and designates the wharf of the buyer as the place for its discharge, does not change the rule as to demurrage for delay in being provided a place to discharge.

This was a libel in admiralty for demurrage for delay caused by a failure to provide a place for discharging a cargo consigned to respondents.

Carver & Blodgett, for libelant.

Homer Albers and A. H. Russell, for respondents.

LOWELL, District Judge. The respondents were wholesale dealers in lumber, having offices in St. John, N. B., in Boston, and in other places. They had no wharf in Boston. A cargo of lumber was shipped by them on board the libelant's schooner Viola from St. John to Boston. The bill of lading was dated July 5, 1897, and read as follows:

"Shipped in good order, and well conditioned, by Stetson, Cutler & Co., on board the Br. Sch'r called the Viola, whereof Forsyth is master, and bound for Boston, Mass., to say:

| | | | Freight Per M. | |
|---|---|---|---|---|
| 1,968 feet spruce boards | at | | $2.12½ | Under On Deck. and |
| 143,880 feet spruce scantling | at | | 2.12½ | |
| 50,024 feet spruce plank | at | | 2.12½ | |

—Being marked and numbered as in the margin; and are to be delivered in the like good order and condition at the port of Boston (the act of God, the queen's enemies, fire, and all and every other dangers and accidents of the seas, rivers, and navigation, of whatever nature and kind, excepted), unto Stetson, Cutler & Co., or assigns, he or they paying freight as above. All on board to be delivered."

There was no written charter party. The Viola arrived in Boston July 12th, and was at once reported by her captain to the respond-

ents. They had already sold her cargo to the Curtis & Pope Lumber Company, to whose wharf they at once ordered the vessel. Owing to the weather, she did not reach there until the morning of July 14th, and then she found there several vessels waiting their turn to discharge. Her own turn did not arrive until July 29th. Thereafter she was discharged with reasonable dispatch. The captain protested against the delay, and claimed demurrage, sending daily bills therefor to the respondents on and after July 22d.

The libelant testified that Beatey, the respondent's agent in St. John, with whom the contract of shipment was made, expressly contracted that the Viola should be discharged without delay. This Beatey denied, and, upon the whole, the evidence failed to convince me that any special agreement was made concerning the schooner's discharge.

At the trial, the parties agreed in writing that 24 hours, in the absence of any qualifying circumstances, is a usual and customary time to have a berth provided by the consignee. The respondents contend that the presence at the designated wharf of vessels which have arrived there earlier than the vessel in question is a qualifying circumstance, and they allege a custom of the port of Boston which requires vessels to wait their turn at the wharf without demurrage for the delay so caused. In the case of Bellatty v. Curtis, 41 Fed. 479 (decided in this district by Judge Nelson), the master of a schooner arriving in Boston with a cargo of lumber consigned to the defendants, and kept waiting his turn at their wharf for a fortnight or more, was denied demurrage. The bill of lading was substantially like that in the case at bar. In his opinion Judge Nelson said that the vessel was discharged in the usual way, and within a period sanctioned by the usage of the port. This case I do not feel disposed to overrule. The decision of a competent court, sitting in a given locality, that a local custom exists, is more than evidence of the custom. If unchallenged for a number of years, it not only declares, but confirms, the custom, and should not be lightly reversed. The testimony concerning the custom given by the witnesses in this case is, of itself, not altogether conclusive. On the whole, it comes to this: That, in the absence of express agreement, a master does not expect or claim a berth for discharge within 24 hours of his reported arrival, if there are vessels ahead of him; but, on the other hand, if he is kept waiting his turn a long time, he usually does complain, and occasionally is paid something for the delay. Even in the case at bar the master made no claim for demurrage until July 22d. The evidence indicates clearly that the presence of vessels discharging at a wharf, or waiting their turn to discharge, is deemed by all parties to be a "qualifying circumstance," and the only difference of opinion concerns the extent of the qualification. Evidence like this certainly does not outweigh Judge Nelson's decision.

The libelant contends that the custom declared in Bellatty v. Curtis is confined to those cases in which the vessel is discharged at the wharf of the consignee, and does not apply if the consignee, having no wharf, and having sold the cargo, sends the vessel for discharge to the wharf of his vendee. There is nothing in the testimony of the witnesses in this case, either those of the libelant or those of the respondents, to suggest that

the custom differs in the two cases supposed. The witnesses either assert that the custom exists in both cases, or deny that it exists altogether. Where the words "or assigns" is found in the bill of lading, the master understands that the wharf of discharge may not yet have been selected (Smith v. Lee, 13 C. C. A. 506, 66 Fed. 344), and there seems no reason why his rights at the wharf of the assignee, to which he is bound to proceed, should differ from his rights at the wharf of his consignee. The hardships complained of by the libelant, which may be real, are substantially the same in one case as in the other. That a custom like the one contended for in this case is not unreasonable seems to be implied in the opinions rendered in the following cases: The J. E. Owen, 54 Fed. 185, 187; Cross v. Beard, 26 N. Y. 85; Keen v. Audenried, 5 Ben. 535, 536, Fed. Cas. No. 7,639; Wordin v. Bemis, 32 Conn. 268, 277. Probably the custom is not wholly without limitations. If a consignee willfully or negligently collects at his wharf at one time a large fleet of vessels, if his wharf is too small for his ordinary business, if it is so disposed that he habitually keeps waiting for a long time vessels consigned to him, he can hardly plead successfully a custom of vessels to wait their turn as a defense to an action for demurrage. A consignee may be liable if such is the condition of his vendee's wharf to which he has directed the vessel consigned to him. This is the answer to the extreme cases put by the libelant's counsel in examination and in argument. I do not think that there has been shown in this case such a condition of affairs at the wharf of the Curtis & Pope Lumber Company. I do not think that a lumber dealer is bound to time the arrivals of his cargoes so that delay in discharge will occur only in consequence of a storm. The delay to which the Viola was subjected extended to the limits of a reasonable custom, but, on the whole, I do not think it overpassed them.

The libelant's counsel further argues that the Viola was not given her turn, but was postponed in discharging to another vessel, which arrived after her. The second vessel was laden with a cargo of a different sort, and I do not think the Viola's cargo could have been discharged with reasonable convenience at the berth given to the smaller schooner. In Bellatty v. Curtis, after a part of the vessel's cargo was discharged, she was hauled out into the stream, and kept there several days, yet no demurrage was allowed. Libel dismissed, with costs.