### MORGAN v. GARFIELD & PROCTOR COAL CO.

(District Court, D. Massachusetts. February 5, 1902.)

#### No. 1,181.

**1. SHIPPING—DEMURRAGE.**

Ordinarily demurrage is the agreed additional payment by the charterer for the allowed detention of the vessel beyond the period specified in the charter party.[1]

---

[1] Definition and general principles of demurrage, see notes to Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.

2. SAME—CHARTER PARTY—CANCELLATION—DEMURRAGE—LIABILITY OF CHARTERER.

A charter party stipulated that the vessel should have 10 days in which to load, with a specified demurrage thereafter; it being agreed that the charterer should not be liable for demurrage if he was prevented from loading by strikes, unless loading had begun, and that in case of a strike the owner might cancel the charter. The vessel remained 18 days without loading, when its captain informed the charterer that a strike was imminent, and that the vessel was lying at the charterer's expense, and asked what concessions the charterer would make. The next day the captain wired the charterer for instructions and propositions, and the latter canceled the charter. *Held*, that the cancellation of the charter relieved the charterer from all liability for demurrage.

In Admiralty.

Carver & Blodgett, for libelant.

Hutchins & Wheeler, for respondents.

LOWELL, District Judge. The respondents chartered the schooner Eagle Wing for a voyage from Baltimore to some Northern port. The material parts of the charter party are as follows:

"Ten days to load, Sundays and holidays excepted, on the terms following: Demurrage five cents per ton thereafter." "It is agreed that said vessel has her turn in loading with other sailing vessels, vessels to load for the government having priority; and parties of the second part are not to be held accountable for demurrage if they are prevented from loading either by strikes at the mines or on the railroad, or any cause beyond their control. In case of strike, party of the first part has privilege of canceling charter party, but, if vessel has commenced to load, then shippers are to be held for demurrage."

The schooner proceeded to Baltimore; arrived and reported March 22d. She lay there without loading until April 10th. On April 10th her captain wrote to the respondent as follows:

"The prevailing opinion at this time is that a strike is imminent by tomorrow, and, should same occur, you will be notified by the Consolidation Coal Co. that they will be unable to load our cargo of coal on your account. As you are aware, the condition of the charter party of Schr. Eagle Wing, that in event of strike the vessel would have privilege of canceling charter. The prevailing opinion of shippers here is that strike will not last long. Would your firm be willing to retain the Eagle Wing to wait for cargo, even though strike should be declared? What concessions, if any, have you to make relative to the matter in question? As you are aware, the Eagle Wing is now lying here at your expense, and will be until loaded or strike prevents loading. I assure you that I have no desire to cancel our charter with you, but merely use these means of notifying you of condition of affairs now prevailing at this port. Kindly advise at earliest moment of your intentions.                                        Yours, truly."

On the following morning he sent the following telegram: "Wire your instructions for Eagle Wing. Waiting your proposition. Prompt answer required." To this telegram the respondents replied as follows: "Cancel charter on account of strike."

A strike began April 10th or 11th. The master sues for demurrage up to April 10th, and it is admitted that, after the 10 lay days had passed, 8 days more had elapsed prior to the cancellation of the charter as above stated. The libelant contends that the cancellation of the charter left the liability for this demurrage still subsisting. The respondent contends that the cancellation of the charter, either by the

libelant under the right given to him by the charter, or by the consent of both parties, has put an end to all liability for demurrage under the charter. Nothing appears in the correspondence between the parties to interpret the clauses of the charter party above quoted, or to take the case out of the general rule.

The question concerns the nature of the liability for demurrage stipulated for in a charter party. Does the liability ordinarily arise only after performance of the contract by the vessel? In other words, when the lay days have expired without loading by the charterer, can the owner treat the contract as rescinded, or is the vessel bound to await longer the convenience of the charterer? Is stipulated demurrage ordinarily compensation for waiting while the vessel is bound to wait by the terms of the contract, or is it compensation for damage sustained by a breach of the contract by the charterer? Is it payment for carrying out the contract, or damages for its breach? Extreme and exceptional cases may be put, but these do not concern the case at bar. That under ordinary circumstances the first alternative correctly states the law, is plain. "The word 'demurrage,' no doubt, properly signifies the agreed additional payment (generally per day) for an allowed detention beyond a period either specified in, or to be collected from, the instrument." Lockhart v. Falk, 44 Law J. Exch. 105. See Cropton v. Pickernell, 16 Mees. & W. 829; Mathewson v. Ray, Id. 329; Gage v. Morse, 12 Allen, 410, 90 Am. Dec. 155; The J. E. Owen (D. C.) 54 Fed. 185, 186. A vessel chartered under a stipulated rate of demurrage, which should sail away after the lay days had run out, would thereby break its contract of charter party. If this be true, it follows that the contract is equally broken if the vessel sails away after one or two or three days' demurrage. No compensation for demurrage could be recovered in the case supposed. Extreme cases may be put, as has been said already, where the result would be otherwise, but the ordinary rule is as above stated. In order to collect demurrage, the contract must ordinarily be carried out, and the cargo must be taken on board. The difference between stipulated demurrage and damages awarded for detention beyond the terms of the contract appears from a consideration of cases like The J. E. Owen (D. C.) 54 Fed. 185, and Empire Transp. Co. v. Philadelphia & R. Coal & Iron Co., 23 C. C. A. 564, 77 Fed. 919, 35 L. R. A. 623. Where no demurrage is stipulated, the contract is deemed a contract to load within a reasonable time under all the circumstances, and the burden is upon the owner, who seeks to recover for excessive detention, to show that the charterer was not diligent. No such burden rests upon the owner who seeks to recover stipulated demurrage. The charterer's diligence or negligence is immaterial. The general principle is further illustrated by Lilly v. Stevenson, 22 Sess. Cas. Scot. (4th Series) 278. There, after certain lay days, demurrage was to be paid at a certain rate, unless the detention arose from a strike. No limit of time was specified. The strike did not begin until the vessel was on demurrage. The vessel waited until the strike was over, then loaded, and sought to recover demurrage for all delay occurring after the expiration of the last lay day. This would have

been the true principle of computation if the charterer had been bound to load within the fixed days, and if demurrage were treated as liquidated damages for breach of contract.    Having broken the contract before the strike began, the charterer could not set up in mitigation of damages that a strike had happened subsequently. The lord ordinary (Lord Wellwood) appears to have agreed with the owner, but his decision was reversed by the court of session.    In delivering the opinion of that court, Lord Trayner said:

"The pursuers argued that the exemption from liability to which I have referred did not apply when no use had been made of the lay days, and that, if the defenders had used their lay days, the cargo would have been loaded before the strike began.    But I cannot accede to that view.    Days stipulated for by the merchant on demurrage are just lay days, but lay days that have to be paid for.    If a charter party provides that the charterer shall have ten days to load cargo, and ten days further on demurrage at a certain rate per day, the shipper has twenty days to load, although he pays something extra for the last ten.    Loading within twenty days is fulfillment of the obligation to load.    Here the lay days proper were limited to sixty hours, but any time beyond that which was occupied in loading the cargo was to be paid for at the rate of 12s. 6d. per hour.    The pursuer said that this would amount to a lease of his vessel for any length of time the defenders were pleased, provided they paid the stipulated rate.    Even if it had been so, I rather think it would have been a good enough bargain for the ship.    But it is not so.    Where the days on demurrage are not limited by contract, they will be limited by law to what is reasonable in the circumstances, as circumstances may happen to exist or emerge.    But there is no such limitation of the application of the demurrage clause in the charter party before us as that which the pursuer maintains there is, nor can any such limitation be fairly implied.    The defenders were entitled to keep the vessel on demurrage, but were to pay no demurrage if the detention was caused by a strike."    Page 286, 22 Sess. Cas. Scot.

See Connor v. Smythe, 5 Taunt. 654; Francesco v. Massey, 42 Law J. Exch. 75, 78.

If this be true, the application of the principle to the case at bar is simple.    At the time of the cancellation of the charter no liability had accrued, enforceable by the libelant.    Nothing was due under the contract.    True, the contract had been performed in part.    It would have been performed in part had it been canceled before the lay days ran out, yet no recovery could then have been had.    Neither in that case nor in this does any benefit accrue to the respondent for which he is liable on a quantum meruit.    See O'Brien v. 1,614 Bags of Guano (D. C.) 48 Fed. 726.    The whole charter is canceled, and the inchoate liabilities arising thereunder are released.

Libel dismissed, with costs.