KINSMAN TRANSIT CO. v. 50,000 BUSHELS OF WHEAT ex Cargo THE HENRY STEINBRENNER.

District Court, W. D. New York.
July 21, 1931.

Brown, Ely & Richards, of Buffalo, N. Y. (David S. Jackson, of Buffalo, N. Y., of counsel), for libelant.

Stanley & Gidley, of Buffalo, N. Y. (Ray M. Stanley, of Buffalo, N. Y., of counsel), for respondent.

ADLER, District Judge.

This is an action for damages in the nature of demurrage brought by the owner of the steamer Henry Steinbrenner against a portion of her cargo for unreasonable detention of the vessel at the Port of Buffalo in May, 1929. 50,000 bushels of wheat were shipped on the vessel by James Richardson and Sons, Limited, of Winnipeg, Manitoba, to Buffalo in care of Charles Kennedy & Company of Buffalo, who thereupon became the care party according to the usage of that port. James Richardson & Sons, Limited, sold the grain to the Seaboard Grain Company, and the Seaboard Grain Company sold the grain to the Oceanic Grain Company, which became its owner before the arrival of the vessel at the Port of Buffalo and continued to be the owner thereafter. The vessel arrived at the Port of Buffalo on the morning of May 10, 1929. There had been an unusual congestion of grain at the port for some little time prior to that date. Charles Kennedy & Company, the care party, controlled the Dellwood elevator, and it was generally understood used the Dellwood for elevating all shipments of grain consigned in its care. The libelant in this case contends that the congestion in the port at this time, which was of course known to Kennedy, must have been communicated to and known by Richardson & Sons, the shippers, who had been continuously making consignments to Kennedy.

The Steinbrenner arrived in Buffalo on a Friday. No part of its cargo was discharged on that day, or on Saturday, May 11th, or on Sunday May 12th. On Monday, May 13th, the fourth day after its arrival, all of its cargo was discharged except the 50,000 bushels here in question. Of this cargo was a lot of 25,000 bushels which was unloaded on May 13th, at the Connecting Terminal Elevator which was controlled by the Altas Grain Elevating Corporation. On the morning of the 13th, the Atlas Corporation, which was doing business with the Oceanic Grain Company, wired the Oceanic that it had just elevated the 25,000 bushels from the Steinbrenner and that it had room for and could elevate on the same day the 50,000 bushels, and requested the Oceanic to instruct Kennedy to turn over to them the 50,000 bushels which had not yet been taken out of the ship. In response to this telegram the Oceanic Company wired to Kennedy that it would appreciate its turning over the 50,000 bushels of the Steinbrenner shipment to the Atlas Company. Kennedy did not reply to this telegram from the Oceanic Company, the owners of the wheat, and declined to turn it over to the Atlas Company when requested by its agent, Sprissler. The testimony is that the employees of the Connecting Terminal Elevator were kept on hand until late in the afternoon of the 13th in order that they might complete the elevating of the 50,000 bushels if Kennedy would agree to turn it over. If Kennedy had given his consent, the unloading of all the grain from the Steinbrenner, including the 50,000 bushels, would have been completed by 7 p. m. of May 13th. Kennedy did not give his consent, and the Steinbrenner was moved to the Dellwood Elevator on the following day, May 14th, and at 3:50 p. m., on that day the unloading of the 50,000 bushels into the Dellwood Elevator began, and was finished at 8:30 p. m., on that evening. The Steinbrenner was then completely unloaded.

The period of detention for which damages are sought to be recovered by this action is from 7 p. m., of May 13, 1929, the time when the vessel could have been completely unloaded at the Connecting Terminal Elevator, and 8:30 p. m. of May 14, 1929, the time when the vessel was finally unloaded at the Dellwood Elevator.

The consignee of a grain cargo, required to unload the vessel, is bound to exercise due diligence under the circumstances and the custom of the port to discharge the vessel as speedily as possible. Ottawa Trans-

it Co. v. 261,000 Bushels of Wheat (D. C.) 260 F. 493. Damages can only be recovered upon proof that the delay complained of was due to some fault or negligence on the part of the respondent. The burden of proving this is upon the libelant. The J. E. Owen (D. C.) 54 F. 185.

■■ In this case the question is whether Kennedy was at fault for not permitting the discharge of the grain cargo from this vessel on May 13th, and holding it in the vessel until May 14th, when it was discharged in his own elevator. What is a reasonable delay in unloading a ship depends upon the surrounding circumstances. In The J. E. Owen, supra, a delay of ten days was held not unreasonable. In that case the libelant sought to prove that if the consignees had been informed of the exact capacity of the other elevators during the time in question, they might possibly have secured the necessary room. This proof was held not sufficient to establish negligence. Judge Coxe in the opinion pointed out that no demand had been made on the consignees or their agents to furnish another elevator, and Judge Hazel in his opinion in Acme Transit Co. v. 133,000 Bushels of Wheat (D. C.) 243 F. 970, 974, commenting upon this statement of Judge Coxe's, says: "The implication might be drawn that, if such a demand had been made of the consignees in this case, they would be liable for any delay occurring thereafter."

The evidence here is that Kennedy, the care party, while the vessel was in the Port of Buffalo waiting to be unloaded, was told by the agent of the vessel that there was space in another elevator, the Hecker Elevator, sufficient to take the cargo. Later on May 13th, the owners of the grain requested Kennedy to turn it over to the Atlas Company, whose elevator had space for it and at whose dock the vessel was moored. In this case, despite the congestion of grain in the Port of Buffalo, and the delays in unloading vessels due to that congestion, space and facilities were offered to the care party by the owner of the grain the day before he finally unloaded it in his own elevator. In the discussion of the law by both Judge Coxe and Judge Hazel in the cases last cited, they clearly intimate that if the consignee or care party failed to discharge the cargo when he had facilities for doing so, it would be proof of negligence on his part.

I have examined the cases cited by respondent and do not find authority for the proposition that a care party, as he is known in the Port of Buffalo, has the kind of control over the shipment consigned to him that would give him the right to hold up the discharge of cargo when facilities for its discharge are offered to him and he is requested by the owner to accept them.

I find that the care party in this case did have facilities offered to him for the discharge of the cargo for the day before he discharged it; that the owner of the cargo requested him to turn it over and make use of the facilities offered; and that his failure to do so was negligence.

A decree may be entered in favor of libelant for $375, the stipulated damages with interest and costs.