## THE A. A. AUGUSTUS.

## PIONEER S. S. CO. v. 194,000 BUSHELS OF WHEAT.

District Court, W. D. New York.
Nov. 17, 1932.

Brown, Ely & Richards, of Buffalo, N. Y. (Frederick L. Leckie, of Cleveland, Ohio, and John B. Richards and David S. Jackson, both of Buffalo, N. Y., of counsel), for libelant.

Dudley, Stowe & Sawyer, of Buffalo, N. Y. (Franklin D. L. Stowe, Ray M. Stanley, and Mason O. Damon, all of Buffalo, N. Y., of counsel), for claimant.

ADLER, District Judge.

This is an action by libelant to recover damages in the nature of demurrage for alleged unreasonable detention of the steamer A. A. Augustus at the port of Buffalo in May, 1929. The Reliance Grain Company, Limited, as owner, claimed the grain libeled.

The libel is based upon two grounds. The first ground, that the cargo is liable for a breach of express charter provisions, I find is not sustained. The second ground, that the claimant failed to perform its duty to provide facilities for unloading the cargo at Buffalo and to unload it within a reasonable time and with reasonable diligence, with the result that the vessel was thereby unjustly and unreasonably detained, will be considered after a statement of the facts and circumstances of the arrival and unloading of the cargo in the port of Buffalo.

The Augustus with its cargo left Ft. William on April 27, 1929, and arrived in Buffalo on May 1st. When the ship broke ground on April 27th, there was no unusual congestion in the elevators at Buffalo, and the claimant cannot be charged with knowledge of the unusual conditions which were found there when the ship arrived on May 1st. The congestion in the elevators at Buffalo became acute on April 29th, and, when the Augustus arrived, there was no space available in the elevators controlled by the care-parties for its grain. Thereupon the agent for the ship notified the care-party that the respondent would be held liable for delay in unloading. The care-party thereupon authorized the ship's agent to unload in any elevator available, thereby giving him the freedom of the port. No space was found until May 9th, when the grain of libelant was unloaded. The testimony is that a reasonable time for unloading in the port of Buffalo under normal conditions is forty-eight hours. The libelant claims an unreasonable delay of six days and fourteen hours.

The claimant was a very large shipper of grain, and moved many cargoes of it into Buffalo during the last days of April and the first days of May. Early in May it had more than one million bushels in the elevators at Buffalo, and on the arrival of the Augustus the elevators under its control were filled with its grain. This fact is important only on the question of whether the claimant contributed to the congestion in the elevators in Buffalo at this time, and whether this congestion in the elevators under the control of the claimant could have been avoided. It appears that the congestion was due to two causes. According to the claimant, one of the causes, entirely beyond their control, was the high water in the barge canal during the latter part of April and the first part of May which prevented them from moving their grain east-

ward by canal. From a careful study of the testimony I conclude that the conditions in the canal at this time were not so unusual or unforeseeable as to excuse the claimant from such obligation as it had to use due diligence in unloading the ship. High water in the canal may have contributed to the congestion in some degree, but, if other conditions had been normal, the grain on the Augustus could have been taken care of.

The other cause for the congestion was the fact that it became evident late in April and about the 1st of May that there would be a reduction in rail rates on grain going east. On May 2d, it was definitely determined that there would be a lowering of rates and that there would be a decrease of 2 cents a bushel. This reduction actually went into effect on May 12th. It appears that many of the shippers, including the claimant, were holding their grain in Buffalo awaiting the reduction in the rate. From the testimony it appears that there was no shortage of cars for rail transportation to the East, and, so far as claimant was concerned, it could have handled its grain for shipment abroad on its arrival at the place of shipment. In fact, within a week after the reduction in rail rates went into effect, 500,000 bushels were shipped east from the Lake and Rail Elevator which was controlled by claimant.

I am brought to the conclusion that the real cause for congestion in the port of Buffalo was that the shippers were waiting for the reduction in the rail rate so that they could move their grain east more cheaply. The claimant had under its control more than a million bushels of grain which it held in Buffalo awaiting this favorable tariff.

■ The claimant, in the absence of a provision in the charter, was bound to use due diligence to unload the cargo, and is liable for unreasonable detention of the ship. Ottawa Transit Company v. 261,000 Bushels of Wheat (D. C.) 260 F. 493; Kinsman Transit Company v. 50,000 Bushels of Wheat (D. C.) 51 F.(2d) 377.

■ I have found that the claimant in this case was not bound by express charter provisions. I further conclude that the fact that the claimant moved large quantities of grain to the port of Buffalo on or about the 1st of May without providing for full storage of the grain in its warehouses on arrival would not spell liability on its part if the grain were moving normally through the port of Buffalo. The grain was not moving normally through the port of Buffalo at this time, and in fact there was an unusual congestion. If

the acts of the claimant caused this congestion, and if the claimant by exercising due diligence could have relieved the congestion to the extent of taking care of the grain in the Augustus, then the claimant is liable for the unreasonable detention of the ship.

I find that, if the claimant had moved its grain eastward by rail in the cars which were available to the seaport where it had facilities for handling it, and had done this during the first days of May before the freight rates had been reduced, the congestion in its elevators would have been relieved and the Augustus could have been unloaded. It did not do so because, if it did, it would not have had the advantage of the reduced freight rate. In my opinion the claimant did not have the right either at law or by the custom of the port to hold the grain in the ship under these circumstances and conditions. My conclusion is that the libelant is entitled to damages for the unreasonable detention of the Augustus for six days and fourteen hours.

A decree may be entered accordingly.