LEWIS v. The ORPHEUS. See Case No. 18,-169.

———

## Case No. 8,330.

LEWIS v. The ORPHEUS. JONES v. SAME. YOUNG v. SAME.

[3 Ware, 143.] [1]

District Court, D. Massachusetts. March Term, 1858. [2]

FEDERAL JURISDICTION—ATTACHMENT OF PERSONAL PROPERTY—POSSESSION OF PROPERTY ATTACHED.

1. When property is in possession of a state court it is exempted from the process of the United States courts.
[Followed in The Berkeley, 58 Fed. 922.]

2. The nature and kind of possession which an officer is bound to keep of personal property attached to save the attachment.

[These were libels by Daniel Lewis, Joseph Young, and —— Jones against the Orpheus, a vessel which, after attachment under process from the state court, was placed under arrest by the marshal of the district court for the district of Massachusetts.]

Mr. Hodges, for libelant.
Mr. Derby, for claimant.

WARE, District Judge. The first question which arises in these cases, is whether the court has jurisdiction. The right of the court to take cognizance of the subject-matter is not questionable; but the Orpheus was attached under process from the state court on the 5th of March, and she was arrested by the marshal under process from this court, on the 15th. If the vessel, at the time when the marshal served his precept was in the custody of the sheriff, it is well settled that the arrest of the marshal was illegal and void. The case of The Robert Fulton [Case No. 11,890], and that of The Oliver Jordan [Id. 10,503], decided at the last term of the circuit court in Maine are directly in point. It is said by the supreme court, that under our system of government there is no mode of preventing an embarrassing and dangerous conflict of jurisdiction be-

tween the courts of the states and those of the United States, but to consider personal property, which is in the custody of one to be withdrawn from the process of the other, except in those special cases provided for by statute. Act March 2, 1833, 4 Stat. p. 634; Harris v. Dennie, 3 Pet. [28 U. S.] 299; Hagan v. Lewis, 10 Pet. [35 U. S.] 401; Pulliam v. Osborne, 17 How. [58 U. S.] 471. To meet this difficulty, it is said that in the proceedings under the state process there were fatal irregularities and defects, which render the whole proceedings void. But the ready answer is that the case is still pending before the state court, and the question whether these irregularities are fatal must be decided there, and not by this court. It may be a good reason why these libels should not be dismissed, but allowed to remain on the docket till that case is decided. If the state court dismisses the suits, on which the vessel was attached by the sheriff, it may appear that the seizure of the marshal was lawful, and these cases proceed to a hearing. But until it is ascertained whether this court has jurisdiction, it would be altogether irregular to proceed to a final decree. When the sheriff made the attachment he appointed Mr. Jameson keeper, and put him in possession of the ship. The keeper was examined, and he says that he remained keeper for seventeen days, two or three days after the arrest by the marshal. At the time when he went aboard, the ship was unfinished and the carpenters were employed in completing the joiner work. During the whole time the weather was extremely cold, and no fire was allowed in the ship; and on account of the severity of the weather the keeper did not remain aboard during the nights. But as she lay at the wharf the vessel was so high that there was no entrance aboard but by a ladder, which was placed there in the morning and taken away at night, and the keeper was there first in the morning before the ladder was put up, and last in the evening when it was removed. Through the whole period of his custody, in the day time, he was either in the vessel or near her, on the wharf or in a counting-room, where the vessel was in plain sight, and was at no time during the day out of sight of the ship; so that it was impossible for her to be removed without his knowledge. During the whole time joiners were at work on the vessel, and many persons were coming and going to visit and look at her, and others were employed in taking in cargo. Mr. Jameson says that he does not know whether he was in the vessel or not when the marshal made the arrest, he not knowing personally the officer, and that he did not know of the arrest until two or three days after it was made, when he notified the marshal's keeper of his possession. Such are the facts with respect to the sheriff's custody, and the question is whether it was sufficient to satisfy the law. My opinion is

1 [Reported by George F. Emery, Esq.]
2 [Affirmed in Case No. 18,169.]

that it was. The nature and kind of possession of personal property that is required of an officer to preserve an attachment depends on the nature of the property. Light articles of small value may properly be removed and kept in immediate possession. But this is impracticable with large articles upon a ship. All that is necessary in respect to such articles is, that the custody be such as will enable the keeper to assert his possessory rights and prevent its being withdrawn without his knowledge. So it has been adjudged by the supreme court of the state. Where heavy blocks of granite were attached and put in possession of a keeper, whose house was within sight of them, and who passed them daily in going to and from his work, this was held to be a sufficient possession without removing them. Sanderson v. Edwards, 16 Pick. 144; Hemmenway v. Wheeler, 14 Pick. 408.

It is further contended that whatever objection there may have originally been to the jurisdiction it has been waived by the claimant's stipulation, by which he submitted to the jurisdiction. Whatever may have been the effect of a stipulation if it had been purely voluntary, I do not think it necessary to determine. As the subject-matter is clearly within the jurisdiction of the court, if it were wholly voluntary it might be taken as a waiver of any other objection. But with a consent extorted by duress it may be otherwise. It is true that an enforced consent is still consent, evicta voluntas est tamen voluntas, but it is voidable. To avoid it in this case, by an objection to the jurisdiction, I admit that the exception must be taken in a reasonable time. In the admiralty it may be taken by a voluntary plea before answering, or it may be taken in the answer. In this case the objection has been made in the answer, and this is in season. Is, then, the claimant's consent to submit to the jurisdiction voidable? The facts are these. The ship lay, when she was arrested, at Lewis' wharf in Boston, and being in the custody of the sheriff the arrest was void. She was then bound on a distant voyage, and partly laden. In order to liberate her from the arrest, and to enable her to proceed on her voyage, the claimant entered into this stipulation. But for this the voyage must have been broken up, and the vessel have remained in custody for an indefinite time, which the progress of the several suits show must have been from the middle of March to the middle of October, seven months at least. Was this consent, it being the only possible means of liberating the vessel, and saving to the owner a heavy loss, so far voluntary as to deprive him of the right of objecting to the legality of the seizure? I think it was not. It was a consent given under duress and constraint, not of his person but of his property, extorted from his fears, not of personal harm, but of a large pecuniary loss. A court professing to be guided in its jurisprudence by the principles of an enlarged and liberal equity, ought to be slow in lending itself to enforce an engagement obtained by such means. According to Domat, when the violence or constraint under which one acts is such as that reasonable prudence obliges him to surrender some property lien, some right, or some other interest, rather than resist, there is wanting that liberty and equality between the parties, which is required to render engagements binding, and a consent so obtained ought to be annulled. Domat, Liv. 1, tit. 12, § 4, in principia.

If this stipulation were to be considered as of the nature of a contract, there seem to be strong reasons in equity against enforcing it by the active agency of the court. But in fact it has none of the qualities of a contract. A contract is an agreement entered into by the mutual consent of the parties, but a stipulation is an instrument taken by order of the court; its terms are determined by the will of the court, and not by that of the parties. Consequently it is to be interpreted by the intention of the court only, as to the nature and intent of its obligation. It being an instrument taken in the interest of justice, to sustain the jurisdiction of the court, it ought not to receive such a construction as would deprive either party of any of his legal rights. This clause, by which the party submits to the jurisdiction of the court, seems to be taken from the stipulation entered into in libels in personam, in judicio sistendi, or answering to the action, and I think should be held to have the same force and meaning as in that. That required the promissor to remain in court and submit himself to its jurisdiction, as far as he was subject to it when the suit was commenced, no further. If, after the service of the process he acquired a new right of declining the former, that was waived, but it did not deprive him of any right of defense he had when the process was served. Lane v. Townsend [Case No. 8,054]. The object was to preserve the authority of the court as it then was, and not to enlarge it. My opinion is that any rights which the claimant had of objecting to the jurisdiction of the court when the stipulation was entered into he still retains.

In the present state of facts, it does not seem to me to be proper to dismiss the libels. They may remain on the docket and await the decision of the state court. If their decision is that the proceedings are so defective that the pending suit must be dismissed, the objection to the jurisdiction of this court may be removed and the case proceed. Or if the parties prefer so to do, the suits here may be discontinued, and they may seek their remedy in the state court.

[The decision of the district court in this case was affirmed by the circuit court where it had been brought up for review, on appeal by the complainants. Case No. 18,169.]