ONE HUNDRED AND NINETY-FOUR SLAVES (JERBY v.). See Case No. 7.288.

ONE HUNDRED AND SEVENTEEN PACKAGES PLUG TOBACCO (UNITED STATES v.). See Case No. 15,936.

----

## Case No. 10,522.

ONE HUNDRED AND SEVENTY-FIVE TONS OF COAL.

[9 Ben. 400.] [1]

District Court, S. D. New York. March, 1878.

BILL OF LADING—FREIGHT— DELIVERY—DAMAGES FOR DELAY.

1. Under a bill of lading given by a canal-boat for 250 tons of coal, deliverable to M. or his assigns, "he or they paying freight for the same at" so much per ton, no freight is due until all of the coal is delivered, unless the delivery is prevented by the act or fault of the shipper or the consignee.

[Cited in Clark v. Five Hundred and Five Thousand Feet of Lumber, 12 C. C. A. 628, 65 Fed. 239.]

2. Under a bill of lading containing no clause as to rate of discharging, the only obligation resting on the consignee is to take the cargo in the customary way, with reasonable diligence; and a delay of the boat in waiting for her regular turn at the wharf for unloading was held, in this case, not to make the owner of the cargo liable in damages for the detention of the boat.

In admiralty.

----

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

H. O. Southworth, for libellant.

G. P. Hawes, for claimants.

BLATCHFORD, District Judge. On the 18th of July, 1876, the Lehigh Valley Railroad Company shipped on board of a canal-boat owned by the libellant, at Perth Amboy, New Jersey, 250 tons of coal, under a bill of lading, which bound the boat to deliver the coal at Jersey City, New Jersey, unto Matthiesen & Werchers "or their assigns, he or they paying freight for the same at the rate of thirty-five cents per ton." The bill of lading states that the coal is shipped on account of the New York Fuel & Grate Bar Company. Matthiesen & Werchers carried on a sugar refinery at Jersey City. This coal was for use by them and was to be unloaded at their wharf. The libellant, who was also master of the canal-boat, arrived with his boat and cargo at a point near the sugar-refinery wharf, on the 19th of July, and reported his arrival, and on that day notified the clerk of the refinery, who was the proper person, of the arrival of the coal. At that time there were other boats with cargoes of coal lying there awaiting their turns to discharge on the wharf, and having precedence, in time, of this canal-boat. These prior vessels were discharged as rapidly as the existing facilities of the wharf permitted, and there was no unreasonable delay in giving a berth, in turn, to this canal-boat. She lay outside of the other boats, awaiting her turn, until July 26th. On that day she was put alongside of the wharf and some of the coal was discharged, leaving the libelled coal on board. The libellant then demanded of the secretary of the New York Fuel & Grate Bar Co., who owned the coal and are the claimants of the coal libelled in this suit, that that company should pay him damage for the detention of the boat. This was not done, and the libellant refused to deliver any more of the coal. On the 29th of July this libel was filed against the coal still on board of the canal-boat. It claims to recover the balance due for full freight on the 250 tons, namely, $35. The freight by the bill of lading is $87.50. The libellant was paid $5 on account of freight, and credits on the freight $7.50, being 3 cents a ton paid by the shippers for trimming, and $40 more, being 16 cents a ton for unloading, which unloading he was not chargeable with. The libel also claims for five days' damage for detention, at $10 a day, allowing four days of the nine as a proper time for unloading.

It is quite clear that the libellant was not entitled to his freight-money when the libel was filed. He had not delivered his cargo. The freight was not due till the whole was delivered. The rate of freight stated in the bill of lading—so much per ton—does not make the freight payable ton per ton, as the coal is delivered. The 250 tons are to be delivered, and then the freight for the 250

tons is payable. The expression of the rate per ton has no more effect than if the bill of lading had said, "paying $87.50 freight for the same, which is at the rate of thirty-five cents per ton." There can be no action for freight unless delivery is either made, or prevented from being made by the act or fault of the shipper or the consignee. 1 Pars. Shipp. & Adm. 220. Here there was no fault on the part of the consignees or the owners of the coal. The bill of lading contained no clause that there should be "despatch in discharging," or "quick despatch in discharging," nor any clause prescribing a given number of days for discharging, or a given rate of speed in discharging, after arrival or reporting. Under such circumstances, the only obligation resting on the consignees was to take the cargo in the usual and customary way, with reasonable diligence. Coombs v. Nolan [Case No. 3,189]. There is no evidence that the boat was delayed otherwise than by waiting for her regular turn, and a delay from such cause does not, under the bill of lading in this case and the circumstances proved, make the owners of the coal liable in damages for the detention of the canal-boat. Cross v. Beard, 26 N. Y. 85; Rodgers v. Forresters, 2 Camp. 483; Burmester v. Hodgson, Id. 488. As the boat was only waiting for her regular turn, the owners of the coal were not in fault for the non-delivery of the cargo, and so were not liable to pay the freight when the libel was filed. What has been said shows that the claim for delay or demurrage is not established.

The libel is dismissed, with costs.