THE MARY RILEY v. THREE THOUSAND RAILROAD TIES.

*(District Court, E. D. Pennsylvania. February 5, 1889.)*

1. DEMURRAGE—RIGHTS OF VESSEL.
   In the absence of an express contract, a vessel is only entitled to demurrage when detained through the fault of the shipper or consignee.

2. SAME—CUSTOM—CONTRACT OF CARRIAGE.
   Where a custom is established requiring vessels to wait their turn in unloading at a particular port, the master is held to contract with reference to it; and, if no stipulation for demurrage is made in the contract, he assumes the risk of delay.

3. SHIPPING—CARRIAGE OF GOODS—FREIGHT—SUIT.
   A claim for freight cannot be sustained where the freight had not become due when suit was brought.

*(Syllabus by the Court.)*

In Admiralty. Libel by John Taylor, master of the schooner Mary Riley, against 3,000 railroad ties lately laden in said schooner, for freight and demurrage.

*Charles Barclay,* for libelant.

*John A. Toomey* and *Henry R. Edmunds,* for respondents.

BUTLER, J. October 7th last, J. W. T. Lee shipped on the Mary Riley a cargo of railroad ties, consigned to his own order at Philadelphia. The vessel arrived in due course, and was ordered by Lee's agent to the Pennsylvania Railroad Company's wharf. On going there she found a number of vessels ahead, unloading in order of arrival, and was thus detained in getting rid of her cargo. The master complained repeatedly of this, and after some days Lee's agent, on being informed by the master that the ties were all white oak, sent the vessel to the Reading Railroad Company's wharf, where such ties were wanted. When the vessel arrived there, and the ties were inspected, and found to be of a different description, they were rejected. She was then ordered back to the Pennsylvania Company's wharf. In the mean time several other vessels had arrived there, and the delay in getting up was thus increased. Seventeen days elapsed between the vessel's arrival in port and the time when unloading commenced. To recover demurrage for this, and also a balance of $103.43 due on account of freight, the suit is brought.

There is some little conflict in the testimony respecting the circumstances under which the vessel was ordered to the Reading Company's wharf. I find them to be, however, as just stated. Lee's agent knew that the latter company would only receive white oak ties, and the fact that he ordered the vessel there seems to be conclusive that he under-

stood these ties to be of that description. The evidence shows that ties brought to this port are delivered only at the railroad companies' wharves, and that vessels bringing them await their turns, and cannot do otherwise,—there being no other place to unload; that they are delivered in pursuance of contracts previously made by shippers or consignees with the companies, or on calls published by the latter. There is very little conflict in the testimony respecting this. The witnesses generally say such is the well-understood custom of the port by persons dealing in and carrying ties here. I find the fact to be as these witnesses state it. Lee's agent testifies to an express agreement that the libelant should take the risk of delay in unloading. In the view I take of the case this is unimportant. It is not improper, however, to say that I do not think the testimony would warrant a finding of such agreement. After the vessel had reached the wharf and unloaded a part of the cargo, the libelant commenced suit for demurrage and freight. An advancement had been made on account of freight, and no demand was made for the balance otherwise than by suit. Is the libelant entitled to recover? In the absence of contract a vessel is only entitled to demurrage when detained through fault of the shipper or consignee. Unless he has contracted to become responsible for delay, or is in some way blamable for the loss of time, he is not subject to charge on that account. I find nothing in this case to justify a conclusion that the detention resulted from any fault of the respondent. The custom of the port respecting the delivery of such cargoes is a part of the contract of shipment, and binding upon the vessel as fully as if reduced to writing therein. *The M. S. Bacon*, 3 Fed. Rep. 344; *Henley* v. *Ice Co.*, 14 Blatchf. 522; *The Glover*, 1 Brown, Adm. 166; *One Hundred and Seventy-Five Tons of Coal*, 9 Ben. 400; *Wordin* v. *Bemis*, 32 Conn. 268. Some of the cases, (among them *Henley* v. *Ice Co.*, *supra*,) it is urged, go further. This, however, I am not now called upon to consider. The master is held to knowledge of the custom, and regarded as dealing with reference to it. He therefore took the risk of delay in unloading. If not satisfied to do this he should have guarded against the danger by stipulating for demurrage. This was his only remedy. He did not, however, do it. His claim for demurrage must therefore be dismissed. Nor can the claim for freight be sustained. Nothing was due on this account when suit was brought. If the respondent had been in fault respecting the delay the suit for freight might be sustained. The money would be due. But, in the absence of such fault, the respondent did not become liable for freight until the cargo was delivered. *One Hundred and Seventy-Five Tons of Coal*, *supra*; *McCullough* v. *Hellwig*, 66 Md. 269, 7 Atl. Rep. 455; *The Eddy*, 5 Wall. 481. The libel must be dismissed, with costs.