CLARK v. FIVE HUNDRED AND FIVE THOUSAND FEET OF LUMBER et al.

(Circuit Court of Appeals, Seventh Circuit. December 14, 1894.)

No. 136.

1. ADMIRALTY PRACTICE—FILING LIBEL BEFORE MATURITY OF CLAIM—COSTS.
    C., on September 15th, filed a libel against the cargo of his steam barge for freight. Such cargo was not discharged or delivered to the consignee

until September 17th, at which time, only, the freight became due. On September 16th two attachments were issued from a state court in suits against C., and served upon the consignee of the cargo, as garnishee. On September 17th the consignee gave bond, and took possession of the cargo. Judgment having been subsequently entered in the state court against the consignee in the garnishment proceedings, the freight money was paid by it upon such judgment, and this fact set up by supplemental answer in the admiralty suit. The district court dismissed the libel. *Held,* that the jurisdiction of the district court for enforcement of the lien for freight was not impaired by the fact that delivery had not been perfected when the libel was brought, nor was that fact ground for a dismissal of the libel, under the practice in admiralty, but only affected the imposition of costs.

**2.** ADMIRALTY—FEDERAL AND STATE COURTS—JURISDICTION.

*Held,* further, that, the jurisdiction of the admiralty court over the res having attached upon the filing of the libel and seizure under the monition, the subsequent attachment and garnishee proceedings in the state court were an infringement of such jurisdiction, were vain, nugatory, and void, so far as concerned the libel in the district court, and should have been disregarded.

**3.** SAME—EQUITABLE DEFENSE.

*Held,* further, that as either the fact that no freight was due at the time of the levy of the attachment from the state court, or the fact that the admiralty jurisdiction had already attached, and excluded the jurisdiction of the state court, would have been a complete defense to the consignee, if 'properly presented in the garnishment proceedings, its payment of the freight in those proceedings raised no equity in its favor to prevent the prosecution of his libel by C.

Appeal from the District Court of the United States for the Northern District of Illinois.

This was a libel by Frank Clark, owner of the steam barge Maggie Duncan, against 505,000 feet of lumber, constituting her cargo, and H. Paepcke & Co., consignees, to enforce a lien for freight. The district court dismissed the libel. Libelant appeals.

The appellant filed a libel in rem in the district court, on September 15, 1892, against the cargo of the steam barge Maggie Duncan, for enforcement of a maritime lien for freight. The libel alleges his sole ownership of the steam barge, and agreement to carry a cargo of lumber from Ontonagon to Chicago for H. Paepcke & Co. in September, 1892; that the lumber was taken on board, arrived at Chicago, and was reported to H. Paepcke & Co., consignees; that he "offered to deliver it to them upon their paying freight to libelant therefor, whereupon they refused to accept it upon said terms"; that the sum of $1,550 "is justly due him from said cargo" for freight. The answer of the claimants, H. Paepcke & Co., asserts that they are a corporation and owners of the cargo; that they have no knowledge who was owner of said steam barge, but admit that she took on a cargo of lumber consigned to claimant, and arrived at Chicago therewith. It further admits "that a demand for freight was made, and that payment thereof was refused because the same, at the time said demand was made, had not been delivered to the claimant, and was not then at the dock of said claimant ready for delivery," and denies that the freight was then due. It then alleges that on arrival at Chicago, September 15, 1892, "and while said vessel was not at the dock of said claimant or ready to discharge her cargo, a demand for the freight which would become due upon the delivery of said cargo" was made, and, when only a small portion had been discharged, the libel was filed, and monition issued. The answer further alleges that on September 16, 1892, two attachments were issued out of the circuit court for Cook county in favor of third parties (named) and against the libelant, and served upon the claimant, requiring it to "answer as to the estate or property of the said Frank Clark then in its possession." The record shows two (so-called) amended answers, which further set up the subsequent proceedings in the state court in the attachment

suits; that judgments were rendered against the libelant, who was there present, for amounts stated, exceeding together the amount claimed for freight; that thereupon the same court entered an order against this claimant, as garnishee, to pay the sum of $1,465.25, and it paid said amount on March 24, 1893, to save execution, no appeal having been taken by said Clark, and the time allowed therefor having expired. The libelant filed exceptions to the amended answers, especially to the allegations of proceedings in the state court as not constituting a defense. Pending the cause, September 17, 1892, claimant gave bond, and obtained possession of the cargo, pursuant to the practice in admiralty. Upon the hearing of the cause, the only testimony was that of the libelant in his own behalf, and Herman Paepcke for the claimant, and was to the following effect: (1) The libelant states: That he talked with Paepcke the day before the steamer arrived, and "he said he would pay the freight upon arrival at the dock. He had before paid on arrival, before discharging cargo." That he called again, about 9 o'clock next morning, the boat having arrived about 11 o'clock the night before, and had the following conversation: "Asked Mr. Paepcke for freight money. He said he would not pay me any; that he had been telephoned to not to pay me freight money; that he did not know whether I owned the boat or not." The libelant says he then offered to show the boat's papers, and said they could pay the captain; but, on demand by the captain, the claimant "refused to pay him." He further testifies: "Boat had commenced to unload lumber; had landed about 50 or 70 thousand feet on dock. Paepcke had on several occasions paid me freight money before cargo was landed"; and, further: "When I found Paepcke would not pay freight, I filed a libel against the lumber for the amount due," which was for the total freight, $1,550. (2) The testimony of Mr. Paepcke, president of claimant, differs only in the following particulars: He says the propeller was at the dock when he came down on the morning of September 15th, but "went away from there up the river," and returned "just before noon"; that libellant demanded "the freight in full for the full cargo," which was refused both to him and to the captain; that the propeller was then "alongside of the dock, but she had not unloaded," and they were "just beginning to unload her." Later, on the same day, and when "not over one-third of the cargo had been unloaded," leaving the balance in the vessel, the marshal seized the cargo upon the monition. He further says: The refusal to pay was "because the cargo had not all been delivered, or put on our dock, and it was therefore not due," and, "besides this, I had been telephoned not to pay him," by the agent of the propeller. He further testifies: "It is customary in Chicago, among lumbermen, to pay part of the freight when the vessel comes alongside of the dock, and the balance after the cargo has been delivered"; that full freight was not payable "until the cargo had all been put on the dock"; that he had never paid the libelant in full, but "only a part before the full cargo was discharged." Service of attachment out of the state court was made September 16th, and "the cargo was not unloaded until the afternoon of the 17th." In answer to a question by the court, the witness said: "If all the cargo had been unloaded, I would not have paid freight to Clark after receiving telephone not to pay." On May 20, 1893, the district court entered a decree that the cause be dismissed, at libelant's cost, and this appeal is prosecuted from that decree.

W. H. Condon, for appellant.

D. J. Schuyler and C. E. Kremer, for appellees.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

SEAMAN, District Judge (after stating the facts). This is a proceeding in admiralty, in rem, for the enforcement of a lien for freight against the cargo of libelant's vessel. The existence of the lien is unquestioned, and it was operative in favor of the vessel

owner from the moment the cargo was taken on board. Its enforcement was a matter peculiarly within the admiralty jurisdiction of the district court. The libel was filed, and the cargo came into the custody of that court through its seizure by the marshal, on September 15, 1892. The only objections urged by the consignee (respondent here and claimant below) against the enforcement of the lien are based upon the following claims: (1) that the libel was prematurely filed; and (2) that under certain subsequent attachment proceedings in the circuit court for Cook county the consignee was held as garnishee of the libelant, and paid the amount due for freight.

1. The fact is undisputed that the cargo was not discharged until September 17th, and therefore was not placed upon the dock, and in condition for inspection and delivery, until two days after the libel was filed. In the absence of express provision otherwise in the contract of affreightment, it is the well-settled general rule that the cargo of a vessel must be unladen, and placed subject to inspection by the consignee, and in complete readiness for a delivery, before the shipowner becomes entitled to his freight, unless delivery is prevented by the act or fault of the shipper or consignee. Brittan v. Barnaby, 21 How. 527; The Eddy, 5 Wall. 481; 1,265 Vitrified Pipes, 14 Blatchf. 274, Fed. Cas. No. 10,536; 175 Tons Coal, 9 Ben. 400, Fed. Cas. No. 10,522; The Mary Riley v. 3,000 Railroad Ties, 38 Fed. 254; 3 Kent, Comm. 219; 1 Pars. Shipp. & Adm. § 5, c. 7; Macl. Shipp. (3d Ed.) 467. The vessel owner may retain his possession of the cargo until the entire freight is paid or adjusted, but cannot claim a partial payment or ratable freight "except in special cases; and those cases are exceptions to the general rule, and called for by the principles of equity." 3 Kent, Comm. 219. The consignee is entitled to delivery of the entire cargo as called for by the bill of lading, and to that end may inspect the whole before he is required to accept or pay the freight. Subject to that inspection, the vessel owner retains his possession and lien, when he so elects, either upon the dock or in the hold. Evidence appears in this record which seems designed to show a custom at the port of Chicago, or between these parties, for the advance of a portion of the freight before a delivery; but it is not in any view sufficiently definite to disturb the general rule, and is immaterial in this case for the reason that the only demand made by the libelant was for the freight money as a whole. The general rule is therefore applicable, and a right of action for the freight had not matured when the libel was filed, unless it can be held that the conduct of the consignee prevented or waived a delivery. The admission by its president that he "would not have paid freight to Clark after receiving telephone not to pay," even if the cargo had been unloaded, taken in connection with the terms of refusal to pay, indicates that complete delivery would not have procured payment, and that there was not entire absence of ground for protection of the lien; but, there being no showing of tender of delivery as a condition precedent to the payment of the freight, we are inclined to assume, for the purposes of

this opinion, that the terms in which the consignee placed his refusal should not be so construed as to dispense, at least, with an unmistakable offer by the vessel owner of inspection and delivery, and that the libel was brought prematurely. But that fact would not prevent or affect the jurisdiction of the district court, which was established over the res by the prior service and seizure. The lien of the libelant remained unaffected, and with it his right to hold the cargo until his freight was paid, or until a final adjudication of the admiralty court upon the merits. The possession which he held of right to secure that lien had been surrendered only to that court for the purpose of having the lien enforced; and the custody of the cargo was constructively in the court until the lien was satisfied. The fact that the respondent, as claimant, had been permitted, in accordance with the practice in admiralty, to give bond and take possession of the cargo, made no change in this status; the bond stands as a representative of the cargo, and the res is regarded as continued in the custody of the court. U. S. v. Ames, 99 U. S. 35; Henry, Adm. Jur. & Prac. § 123; The Fidelity, 16 Blatchf. 569, Fed. Cas. No. 4,758; The Orpheus, 3 Ware, 143, Fed. Cas. No. 8,330.

2. With reference to the attachment proceedings in the circuit court for Cook county, which appear only as set up in the answer and supplemental answers of the claimant, it is clearly shown that they were both commenced, and the claimant, as consignee, was served with the garnishee summons therein, on September 16, 1892. This was before there was an indebtedness of the consignee for the freight, and was open to the objection that it was premature equally with the libel. But it was indisputably after the service of the monition out of the district court upon the libel, and the subject-matter, then being within the jurisdiction of the admiralty court, was beyond the reach of the process or jurisdiction of the other court. The rule is firmly established, in respect to different co-ordinate courts having the same subject-matter before them, that the court which first obtains possession of the res or of the controversy by priority in the service of its process acquires exclusive jurisdiction for all the purposes of a complete adjudication; and, where the right of a party to prosecute his suit in the United States court has attached, "that right cannot be arrested or taken away by any proceeding in another court." Wallace v. McConnell, 13 Pet. 136; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Heidritter v. Oilcloth Co., 112 U. S. 294, 5 Sup. Ct. 135; Sharon v. Terry, 36 Fed. 337. In Covell v. Heyman the doctrine is expressed which must govern here:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they coexist in the same space, they are independent, and have

no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and, when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues."

This doctrine is reciprocal, making priority of service or possession the test. It is essential to prevent collisions in jurisdiction which would seriously embarrass the administration of justice, and has fortunately obtained recognition by the courts, state as well as national. Under it the subsequent attachment proceedings in the state court, so far as concerned this libel in the district court, were "vain, nugatory, and void." Heidritter v. Oilcloth Co., supra. They constituted no defense, and the exceptions to the answer of the respondent in that regard were well taken, and should have been sustained. Wallace v. McConnell, 13 Pet. 136.

The foregoing propositions are not seriously contested in the argument upon either side in this appeal. The respondent invokes, in support of the decree, strict application of the letter of the law as contained in the first proposition,—that the premature filing of the libel justified its dismissal,—and, conceding that equitable rules must govern for such disposition, claims that all equity is with the respondent by reason of its alleged inforced payment of the amount of freight under the attachment proceedings, which are then entitled to equitable consideration, "as accomplished facts," without regard to their legal effect. The appellant rests his argument for reversal upon the second proposition,—that the district court obtained and must uphold its exclusive jurisdiction. A question of practice is involved which is of general interest, and has an importance beyond the amount here in controversy. It is well settled that courts of admiralty "proceed upon equitable principles and according to the rules of natural justice" (Ben. Adm. §§ 329, 358); that the utmost liberality will be exercised in the interest of justice to save a libel from dismissal by disregarding technicalities which would operate for its defeat according to the practice at common law (The Adeline, 9 Cranch, 244). Referring to the liberality indulged in the former, as distinguished from the rigid rules which prevail in the law courts, it is remarked by Mr. Justice Story, in the opinion in The Adeline: "No proceedings can be more unlike than those in the courts of common law and in the admiralty." In the case at bar, as we have before observed, the libelant was entitled to the lien for the freight, and was in rightful possession of the cargo for its security when he filed his libel to enforce his lien; but his action was deemed premature because he had not then made a complete delivery or tender of the cargo to the consignee. Thereupon his libel was dismissed by the district court, with costs, and in effect the cargo was left out of the hands of the libelant, and transferred to the possession of the consignee by force of the bond which had been given to take the place of the res. Although that court

had established complete jurisdiction over the res, had entertained his libel for the enforcement of the lien up to that time, and had taken the cargo in charge to that end, the libelant was peremptorily sent out of court, deprived of his cargo, and without any measure provided by the court for protecting his indisputable lien and right of possession. Is this course in accord with the equitable rules which govern a court of admiralty? Even at law, where the plaintiff in replevin fails for want of a demand of the goods, in a case in which a demand is a condition precedent to a right of action, the approved course is an imposition of costs 'only; and the goods, having come to the custody of the court through the replevin process, will not then be sent by its action into the hands of a defendant urging that technical defense alone, in the face of a showing that the right of possession is in the plaintiff, except for the failure to make demand, but will be retained for final disposition. Wells, Repl. § 372. Surely, it is incumbent on an admiralty court to have at least equal regard for its suitors. Applying the principles of equity to the admiralty practice, where a maritime lien exists, the fact that the indebtedness has not matured is not ground for dismissal of a libel brought to enforce the lien. Objection that it was premature will be met by a provision of costs or other terms to protect the adverse party from harm, but the libel will be retained to save the libelant from a dismissal which would defeat all remedy. This is the rule pronounced in the early case of The Salem's Cargo, 1 Spr. 389, Fed. Cas. No. 12,248, where the libel was prematurely filed for freight; and in the recent case of The Pioneer, 53 Fed. 279, Judge Green retained a libel which was filed more than two months before maturity of a right of action, and states as the rule which governs:

"The premature filing of a libel, if the right to libel accrues afterwards, and before the determination of the issue, affects the question of costs only. It is not necessary, nor is it the practice in admiralty, to dismiss such libel if, when the matter is presented to the court for final determination, it appears that the right to libel exists."

When this libel was dismissed, the freight was unquestionably due, and by the dismissal the libelant was deprived of his possessory rights in the cargo, and of all remedy in the district court. The decree is a final disposition of the controversy, and it can only be upheld by a record showing just cause for the summary dismissal. In an appeal in admiralty from the district court, this court is not reviewing "a question of discretion, but is hearing an appeal which is a new trial," and must deal with the questions involved "as though they were original questions." Towboat Co. v. Pettie, 1 U. S. App. 57, 1 C. C. A. 314, 49 Fed. 464; The Philadelphian, 9 C. C. A. 54, 60 Fed. 423; The Beeche Dene, 5 C. C. A. 208, 55 Fed. 526; The Portland and The State of California, 7 U. S. App. 20, 1 C. C. A. 224, 49 Fed. 172. All support for the decree rests upon a recognition of the ulterior proceedings in the state court as "accomplished facts." There is nothing in the conduct of the libelant which should give force to those proceedings beyond their prima facie value, or should prevent him from presecuting his suit in admiralty where he has rightfully

sought relief. He was an involuntary party, as defendant, in the actions in the state court, and his presence there, alleged in the answer, was proper and necessary in the principal suits, and would constitute no waiver of rights in his libel. His appearance in the garnishment proceeding, if material, is not asserted, and there is no claim that he gave consent or countenance in any form to the alleged payment there by the respondent, as garnishee, of the amount of freight money, or waived any objections to impounding his lien claim. He had the right to rely on an assumption that there would be no invasion of the admiralty jurisdiction of the res—which was exclusive for all the purposes of his prior libel—by any attempted enforcement of the state court judgment, and that no payment would be made by the garnishee, except in pursuance of a determination of the primary cause in admiralty. Under the authorities cited, the proceedings in the state court were foreign to, and without effect upon, the controversy in the district court. They could not be made defensive matter in the cause, or enter into consideration to impede or interfere with a complete adjudication by the district court. This is not a status resting in discretion, convenience, or comity, but is one of necessity and absolute right. The court is without power to yield its jurisdiction, once firmly established, to any attempts in other coordinate courts to administer in the same matters. The question is not whether the state court had jurisdiction over the libelant, as defendant before it, to adjudge a liability to its suitors, or had jurisdiction over the garnishee. Such jurisdiction may have been complete, but it had no power to supplant or stay the prior libel in the district court, or to relieve the garnishee from liability for the freight (on its bond for possession of the cargo) in that court. The principles which govern the jurisdiction, and the limitations where jurisdiction is subordinate, are well defined by Judge Jenkins in Ahlhauser v. Butler, 50 Fed. 705. The garnishee had an absolute defense to this garnishment, aside from the fact that there was no indebtedness for the freight for want of a delivery of the cargo, in the answer that all liability was previously impounded by the libel in rem, in a jurisdiction where the garnishment could not be recognized. Drake, Attachm. (6th Ed.) § 621. The right and the duty to make this defense rested on the garnishee, and not on the libelant as defendant. Any peril which was involved there, either through neglect or through an overruling of the defense, was the peril of the garnishee; and any imposition of liability there cannot be transposed to thrust it upon the libelant, and destroy his remedy in the district court. Whether that defense was presented in good faith is not for this court to inquire, but the presumption is fair, and in accord with comity, that it would have prevailed in the state court if well asserted. If the respondent paid over the amount of the freight, without complicity or indemnity, in the face of the pending libel, and in compliance with a proceeding which must be disregarded in the admiralty court, no ground is presented for a denial of the admiralty jurisdiction. To recognize the alleged payment as raising an equity in favor of re-

spondent equivalent to a satisfaction of the libel claim, and thereupon dismissing the libel, is tantamount to an acceptance of the foreign proceeding as conclusive, and a practical subordination of the jurisdiction which was primary. In this case the effect of a dismissal does not even stop with the denial of all remedy to the libelant, but, leaving the res in the possession of the respondent through its bond, the arm of the admiralty court is made to serve in ratification and enforcement of the proceedings which were otherwise "vain, nugatory, and void."

Upon this record we are constrained to hold (1) that the jurisdiction of the district court for enforcement of the lien for freight was not impaired by the fact that delivery had not been perfected when the libel was brought, nor was that fact ground for dismissal under the practice in admiralty; (2) that the allegation of the subsequent attachment and garnishee proceedings in the circuit court for Cook county, and the payment thereunder, should have been disregarded by the district court; (3) that no equities or grounds of estoppel are shown, running against the libelant, which should prevent his prosecution of the libel, and the alleged equities in favor of the respondent, if alone entitled to consideration, are not faultless or free from doubt; (4) that the libel should have been sustained. While efforts of the courts are to be commended which tend to avoid conflicts in jurisdiction and uphold comity, so far as may be with just regard to the rights of suitors, there can be no surrender of jurisdiction. In the subject-matter of this libel there is special reason for upholding the jurisdiction, because the freight earnings of a vessel belong essentially to admiralty cognizance. Although the old maxim that "freight is the mother of wages" has been so far modified by statutes (Rev. St. § 4525), that the wages of seamen are no longer contingent upon the earnings of freight, the money which so accrues is regarded as a fund for security of the seamen, and they have a lien upon it as well as upon the vessel "which follows them into whose hands soever they may go." 2 Pars. Shipp. & Adm. 60. This fund is deemed a part of the vessel, and applicable to expenditures which are required for its navigation or care. There should be no encouragement of interference with it by jurisdictions foreign to the admiralty, and certainly not when the admiralty jurisdiction has obtained exclusive possession of the res. The decree of the district court is reversed, and the cause is remanded with instructions to decree in favor of the libelant for the amount due for freight, but without costs in the district court, and less the amount of costs allowed to the respondent there, and for further proceedings in conformity with this opinion; the respondent to pay the costs on appeal. So ordered.