### STARR et al. v. CHICAGO, R. I. & P. RY. CO. et al.

#### (Circuit Court, D. Nebraska. April 25, 1901.)

1. JURISDICTION OF FEDERAL COURTS—POWER TO DETERMINE.

   The federal courts must determine for themselves the limits of their jurisdiction, and as to such question the supreme court of the United States is the final arbiter.

2. SAME—FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION.

   Wherever a federal court and a state court have concurrent jurisdiction, the tribunal whose jurisdiction first attaches holds it to the exclusion of the other until its duty is fully performed and the jurisdiction involved is exhausted; and, when a federal court has so acquired priority of jurisdiction, it is its duty to protect such jurisdiction by injunction, if necessary, and that right is not affected by the eleventh constitutional amendment, withholding from its jurisdiction suits against states, nor by Rev. St. § 720, prohibiting the issuance of injunctions to stay suits in a state court.

3. SAME—SUITS AGAINST STATE.

   A suit to enjoin individuals acting as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of complainants is not one against the state, within the meaning of the eleventh constitutional amendment, but is one within the jurisdiction of the federal courts.[1]

4. SAME—PRIOR FEDERAL JURISDICTION—PROTECTION BY INJUNCTION.

   A federal court in a suit by stockholders of a railroad company issued a preliminary injunction restraining such company from putting in force a schedule of rates prescribed by a state statute alleged to be in violation of the constitution of the United States, and also enjoining officers of the state, who were made defendants, from instituting proceedings to enforce such statute. In related suits against the same state officers, involving the same questions, and by stipulation to be determined on the same evidence, appeals were taken to the supreme court of the United States, which held the statute unconstitutional, and also that the suits were within the jurisdiction of the court, and the injunctions granted therein were made permanent. An attorney general of the state, who subsequently succeeded to the office, instituted suits in the name of the state in state courts against the railroad company defendant in the first-named suit, in which there had been no final hearing, to recover heavy

---

[1] Federal jurisdiction in suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

penalties for its failure to put in force the schedule of rates prescribed by such statute. *Held*, that such suits were an interference with the prior acquired jurisdiction of the federal court, and, on proper application therefor, its injunction would be extended to the new attorney general, to restrain him from further prosecuting them until its own determination of the pending suit.

5. RES JUDICATA.—JUDGMENT DECLARING UNCONSTITUTIONALITY OF STATUTE.
　　Where the supreme court of the United States has determined that a state statute is unconstitutional, and has affirmed a decree perpetually enjoining the attorney general of the state from enforcing it, such adjudication of the invalidity of the statute is conclusive upon an attorney general who subsequently succeeds to the office.

In Equity. On demurrer to supplemental bill and motion for temporary injunction.

Woolworth & McHugh, for complainants.

Frank N. Prout, per se.

Before SANBORN, Circuit Judge, and MUNGER, District Judge.

SANBORN, Circuit Judge. This is a demurrer to a supplemental bill of the complainants, which discloses these facts: In 1893 the legislature of the state of Nebraska passed an act commonly called the "Maximum Freight Rate Law," which named certain rates of transportation, required the railway companies operating in that state to reduce their rates to those there prescribed, and provided that they should become liable to severe penalties for any failure to comply with its provisions. Comp. St. Neb. 1893, c. 72, art. 12. The complainants were stockholders of the Chicago, Rock Island & Pacific Railway Company; and on August 3, 1893, they exhibited to this court their bill in equity against the railway company, George H. Hastings, who was then the attorney general of the state of Nebraska, and numerous other parties, officers of the state, upon whom the discharge of some duty devolved under the act of the legislature to which we have adverted. They alleged in this bill that the rates prescribed by this act were confiscatory, and that the law was unconstitutional, and prayed for a temporary and perpetual injunction against the defendants, forbidding them from taking any action to put in operation or to enforce any of the provisions of the law. On August 3, 1893, this court issued a temporary injunction upon a bond for $10,000, which forbade the railway company from putting in operation the rates prescribed by the law and from complying with its provisions; prohibited George H. Hastings, the attorney general, from bringing, or aiding in bringing, or causing or advising to be brought, any proceeding by way of injunction or mandatory or other process or civil action or indictment against said company for or on account of any act or omission commanded or forbidden by the act; and restrained the members of the board of transportation of the state from taking any action under the law until the further order of this court. At about the same time that this suit was commenced, the stockholders of the Chicago, Burlington & Quincy Railroad Company, of the Chicago & Northwestern Railway Company, and of the Union Pacific Railway Company

brought suits of the same nature against those companies, respectively, and against George H. Hastings, the attorney general, and against the other officers of the state, and prayed for the same relief. The issues in the four suits were the same, and they were prosecuted and defended by the same counsel. Voluminous proofs were taken in the three suits against the other companies, and it was agreed that the proofs taken in those suits should have the same force and effect in this suit as if taken herein; and that the same decree should be eventually rendered in this suit that should be finally affirmed or rendered by the supreme court in those suits. Constantine J. Smyth succeeded George H. Hastings as attorney general of Nebraska, and was substituted for him in the three suits. These three cases finally resulted in decrees to the effect that the maximum freight rate law was unconstitutional; that the railway companies, the board of transportation, its members and secretaries, were forbidden from putting in force the rates it prescribed, or from complying with its provisions; "and that the attorney general of this state be in like manner enjoined from bringing, aiding in bringing, or causing to be brought, any proceeding by way of injunction, mandamus, civil action, or indictment against said companies, or either of them, or their receivers, for or on account of any action or omission on their part commanded or forbidden by said act." Smyth v. Ames, 169 U. S. 466, 477, 550, 18 Sup. Ct. 418, 421, 435, 42 L. Ed. 819, 850. Smyth was not substituted for Hastings in this suit. In ignorance of the injunction herein, he brought an action in the name of the state of Nebraska, in the year 1900, in the supreme court of the state of Nebraska, against the Chicago, Rock Island & Pacific Railway Company, for $310,000, and another in one of the district courts of the state for $150,000, penalties prescribed by the freight rate law for the failure of the company to disobey the injunction of this court, and to reduce its rates of transportation to the rates prescribed by that act. About January 1, 1901, the defendant Frank N. Prout succeeded Smyth as attorney general of the state. To the action in the supreme court of Nebraska the railway company answered the proceedings in this suit in this court, and made a motion for judgment on the pleadings, which was denied by the supreme court of the state on the ground that this court, on account of the eleventh amendment to the constitution, had no jurisdiction to enjoin the attorney general or any other officer of the state from enforcing the provisions of this unconstitutional law. State v. Chicago, R. I. & P. Ry. Co. (Neb.) 85 N. W. 557. The prayer of the supplemental bill is that the injunction in this case be extended to Frank N. Prout, as attorney general of the state of Nebraska; that he be restrained from further prosecuting the two actions against the railway company; and that the complainants have general relief. The ground of the demurrer is that the relief sought by the supplemental bill is in contravention of the eleventh amendment of the constitution of the United States, which provides:

"The judicial power of the United States shall not be construed to extend to any suit at law or in equity commenced or prosecuted against one of the

United States by citizens of another state or by citizens or subjects of any foreign state."

The contention of Mr. Prout is that this court has no jurisdiction to enjoin him from enforcing the maximum freight law, because he is acting not for himself, but for and in the name of the state, and that this proceeding is in reality a suit against the state.

This court is not at liberty to disregard the decisions of the supreme court of the United States. Its duty is completely performed when it protects the rights and administers the remedies of litigants in strict accord with the rules of law established by those decisions. In the case before us the opinions of that court, and the decrees which it has rendered or affirmed, have conclusively settled every question which has been presented, and have left nothing open for our discussion or decision. We shall accordingly content ourselves with a brief statement of the principles which determine and the authorities which compel our action.

1. The federal courts must determine for themselves the limits of their jurisdiction, and the supreme court of the United States is the final arbiter in all questions of this nature. A renunciation of this power or a failure to discharge this duty would be fatal to our system of government. It would withdraw the keystone of the arch. U. S. v. Peters, 5 Cranch, 115, 3 L. Ed. 53; Freeman v. Howe, 24 How. 450, 459, 460, 16 L. Ed. 749.

2. Wherever a federal court and a state court have concurrent jurisdiction, the tribunal whose jurisdiction first attaches holds it to the exclusion of the other until its duty is fully performed and the jurisdiction involved is exhausted. This rule applies equally to civil and criminal proceedings. Harkrader v. Wadley, 172 U. S. 148, 164, 19 Sup. Ct. 119, 43 L. Ed. 399; Sharon v. Terry (C. C.) 36 Fed. 337; Wallace v. McConnell, 13 Pet. 135, 10 L. Ed. 95; Clark v. Five Hundred and Five Thousand Feet of Lumber, 65 Fed. 236, 12 C. C. A. 628, 24 U. S. App. 509; Gates v. Buckeye, 12 U. S. App. 69, 4 C. C. A. 116, 53 Fed. 961; Chittenden v. Brewster, 2 Wall. 191, 17 L. Ed. 839; Orton v. Smith, 18 How. 263, 265, 15 L. Ed. 393; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, 24 Fed. Cas. 704 (No. 14,401); Owens v. Railroad Co. (C. C.) 20 Fed. 10; Union Mut. Life Ins. Co. v. University of Chicago (C. C.) 6 Fed. 443; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Peck v. Jenness, 7 How. 612, 622, 625, 12 L. Ed. 841; Taylor v. Carryl, 20 How. 583, 596, 597, 15 L. Ed. 1028; Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; Heidritter v. Oilcloth Co., 112 U. S. 294, 302, 5 Sup. Ct. 135, 28 L. Ed. 729; Riggs v. Johnson Co., 6 Wall. 166, 196, 18 L. Ed. 768; Central Trust Co. of New York v. South Atlantic & O. R. Co. (C. C.) 57 Fed. 3.

3. The foregoing principle is so indispensable to the harmonious working of our systems of federal and state jurisprudence that neither the eleventh amendment to the constitution, nor section 720 of the Revised Statutes, which prohibits the issue by a court of the United States of a writ of injunction to stay proceedings in any court of a state, can be permitted to interfere with its maintenance.

The court which first obtains jurisdiction of the subject-matter and of the necessary parties to a suit may, and if it discharges its duty it must, if necessary, issue its injunction to prevent any interference by any one with its effectual determination of the issues, and its administration of the rights and remedies involved in the litigation. French v. Hay, 22 Wall. 250, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Fisk v. Railroad Co., 10 Blatchf. 518, Fed. Cas. No. 4,830; Garner v. Bank, 33 U. S. App. 91, 16 C. C. A. 86, 67 Fed. 833; Terre Haute & I. R. Co. v. Peoria & P. U. R. Co. (C. C.) 82 Fed. 943.

4. In suits to enjoin officers of a state from inflicting threatened injury upon property rights, two classes of cases arise: (1) Those in which the suits are held to be in reality against the state, and of which the federal courts may not take jurisdiction on account of the eleventh amendment to the constitution; and (2) those in which the threatened acts may not be justified under the authority of a state of which the national courts have jurisdiction, and to which the prohibition of the eleventh amendment has no application. In Pennoyer v. McConnaughy, 140 U. S. 1, 10, 11 Sup. Ct. 699, 35 L. Ed. 363, the supreme court thus distinguished these classes:

"The first class is where the suit is brought against the officers of the state, as representing the state's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts. Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Louisiana v. Jumel, 107 U. S. 711, 2 Sup. Ct. 128, 27 L. Ed. 448; Antoni v. Greenhow, 107 U. S. 769, 2 Sup. Ct. 91, 27 L. Ed. 468; Cunningham v. Railroad Co., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992; Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, 29 L. Ed. 805. The other class is where a suit is brought against defendants, who, claiming to act as officers of the state, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights of property of the plaintiff acquired under a contract with the state. Such suit, whether brought to recover money or property in the hands of such defendants unlawfully taken by them in behalf of the state, or for compensation in damages, or, in a proper case, where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain, legal duty, purely ministerial, is not, within the meaning of the eleventh amendment, an action against the state. Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; Tomlinson v. Branch, 15 Wall. 460, 21 L. Ed. 189; Litchfield v. Webster Co., 101 U. S. 773, 25 L. Ed. 925; Allen v. Railroad Co., 114 U. S. 311, 5 Sup. Ct. 925, 962, 29 L. Ed. 200; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185."

This classification has since been repeatedly approved. Ex parte Tyler, 149 U. S. 164, 192, 13 Sup. Ct. 785, 37 L. Ed. 689; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648; Tindal v. Wesley, 167 U. S. 204, 220, 17 Sup. Ct. 770, 42 L. Ed. 137.

5. This case falls in the second class. It is a suit to enjoin individuals, acting as officers of the state, from enforcing an unconstitutional enactment to the injury of the rights of the complainants. It is not governed by the eleventh amendment to the constitution, and this court has complete jurisdiction of its subject-matter and of the parties to the litigation. Reagan v. Trust Co., 154 U. S. 362,

369, 371, 373, 390, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 515, 517, 518, 18 Sup. Ct. 418, 42 L. Ed. 819. The opinion in Smyth v. Ames concludes all discussion of this question. We are all bound to abide by that decision, because it is the supreme law of the land. That case presented the same unconstitutional law, the same pleadings, the same issues of fact, and the identical question of law upon the determination of which this suit hinges. The supreme court of the United States there decided that this court had jurisdiction to issue, and that it rightfully issued, its writ against the attorney general of the state of Nebraska, enjoining him from bringing and from aiding in bringing any suits or proceedings to enforce the provisions of the maximum freight rate law of Nebraska. In view of this conclusive adjudication of the very question here in issue, it would be an idle task to distinguish or review other cases wherein other questions, such as the power of a court of equity to enjoin criminal proceedings, were involved, as in Fitts v. McGhee, 172 U. S. 516, 531, 19 Sup. Ct. 269, 43 L. Ed. 535, and Harkrader v. Wadley, 172 U. S. 148, 169, 170, 19 Sup. Ct. 119, 43 L. Ed. 399, and we refrain from their consideration or discussion. It is enough that the highest court in the land—the court by whose decisions courts, counsel, and citizens alike are bound to abide— has authoritatively determined the very issue involved in this case, and here we must leave it.

This suit, then, was commenced in 1893. This court at that time obtained jurisdiction of the subject-matter of this litigation, of the issue whether or not this law of Nebraska was constitutional and enforceable, and of the parties to this suit,—the railway company and those who were then acting as officers of the state. It rightfully enjoined the company from reducing its rates to those prescribed by the law, and it lawfully prohibited the attorney general of the state and its other officers from enforcing its provisions. That injunction has never been vacated or modified, and it still remains in force. Vulcanite Co. v. Folsom (C. C.) 3 Fed. 509. The defendant Frank N. Prout is prosecuting actions commenced in 1900, six years after this suit was begun, to recover of the defendant railway company penalties to the amount of $450,000 because it obeyed the injunction of this court, and failed to reduce its charges to those specified by the unconstitutional law. In other words, the effect of these later actions is to toll off to another court the question which has long been and still is properly in litigation here, to severely punish one of the parties to this suit for its obedience to an injunction lawfully issued upon a prayer of the complainants in this court, and to forestall and nullify any decision and decree of this court regarding issues of which it first lawfully took jurisdiction. The impropriety, the inadmissibility, of such a proceeding, in the light of the fundamental rules of our judicial systems, to which we have now adverted, is so manifest that we have no doubt that the learned attorney general, when his attention is once directed to them, will at once perceive the propriety and necessity of suspending all action in other courts involving the unconstitutionality of this law, and the right and duty of this railway company to reduce its charges

to those there prescribed, until this court, which first acquired jurisdiction of the issues and the parties, has finally determined the questions presented. The court of appeals has frequently required the federal courts of this circuit to stay their hands and to hold their suits in abeyance until the final determination by the state courts of issues of which those courts first acquired jurisdiction. Gates v. Bucki, 4 C. C. A. 116, 53 Fed. 961; Zimmerman v. So Relle, 25 C. C. A. 518, 80 Fed. 417, 419. If the state courts had first taken jurisdiction of the issues involved in this suit, we should have gladly followed the foregoing decision, but the rule applies where the federal court first takes jurisdiction as well as where jurisdiction is first acquired by the state court. The enforcement of this rule, that the court which first takes jurisdiction must retain and exercise it to the exclusion of all proceedings in other courts until its jurisdiction is exhausted by the final judgment or decree, and by its effective execution, is indispensable to prevent unseemly conflicts between courts and their officers, and "confusion worse confounded." The maintenance of this rule requires that the defendant Frank N. Prout, acting as attorney general of the state of Nebraska, shall not bring or prosecute in any other court any actions or proceedings involving the constitutionality of the maximum freight rate law of Nebraska, and the rights and duties of this railway company thereunder to reduce its rates to those there prescribed, until the final determination of this suit, and that the jurisdiction and power of this court to determine those issues, to render and enforce its decrees in this case, shall be left unlimited and unvexed by any such proceedings. The supreme court decided in Smyth v. Ames that this court rightfully issued its injunction to this effect against the then attorney general of the state of Nebraska upon the same facts which the supplemental bill alleges and the demurrer admits condition the rights and remedies of the parties to this suit. There is no escape from the conclusion that the complainants are entitled to the same relief against the present attorney general of this state. He has no higher right or better authority to proceed against this railway company, subsequent to a decision of the supreme court that the law under which he is acting is unconstitutional, than his predecessor had to proceed under it before that decision. New Orleans v. Citizens' Bank, 167 U. S. 388, 389, 17 Sup. Ct. 905, 42 L. Ed. 202. The demurrer to the supplemental bill must be overruled; a writ of injunction must be issued against Frank N. Prout, temporarily restraining him from bringing or prosecuting actions, in accordance with the views expressed in this opinion; and, if the defendants elect to stand upon this demurrer, a final decree in the form approved by the supreme court in the case of Smyth v. Ames must be rendered herein in favor of the complainants.